receiver. An order will enter on trustee's petition accordingly.

Order.

HARPER, District Judge.

Petition of United States for Review of Referee's Order entered December 23, 1953, on Trustee's Petition for Instructions as to filing Income Tax Returns on behalf of Bankrupt Corporation for the Years 1951 and 1952.

Memorandum of the Referee is hereby adopted as the memorandum of the court, and the order of the Referee is in all respects confirmed.

**PLESHA v. UNITED STATES.**

**MABBUTT v. UNITED STATES.**

**KERN v. UNITED STATES.**
No. 6326.

United States District Court.
N. D. California, N. D.
Dec. 23, 1953.

ever, we are told that the "Purpose" of the statute is to "suspend enforcement of civil liabilities" of military personnel. Further on in the same section, we are again told that provisions are made "for the temporary suspension of legal proceedings and transactions" affecting service men. This opening section seems to have escaped the notice of counsel. 50 U.S.C.A.Appendix, § 510.

Coming as they do at the very threshold of the statute, these Congressional declarations tincture the entire enactment. Every article, every section, every paragraph, every sentence is tinged with this "temporary suspension" hue—unless a contrary legislative intent is plainly shown.

No such contrary intent has been even intimated in any of the sections pertinent to the present lawsuit.

1. *Statement Of The Case.*

The original complaint was filed by the plaintiff Plesha. Complaints in intervention were filed by Mabbutt and Kern. The three pleadings were brought under the National Service Life Insurance Act of 1940, 38 U.S.C.A. §§ 801–818. It is sought to recover amounts withheld by the defendant from a "special dividend" declared by the Administrator of Veterans' Affairs, alleged to be due each plaintiff on his policy of National Service Life Insurance, hereinafter referred to as "insurance".

Inter alia, it is alleged that each plaintiff made claim for all money alleged to be due him under that dividend; that each claim was approved in part and denied in part; that the partial denial "was without legal cause or justification"; and that there is a disagreement as to each such claim, within the meaning of 38 U.S.C.A. § 817.

The defendant has set up three principal defenses:

1. That the complaint fails to state a claim upon which relief can be granted.

2. That the Court is without jurisdiction of the cause of action, because it is not cognizable under 38 U.S.C.A. Sections 445 and 817, and the defendant has not

White, Harber & Schei, Sacramento, Cal., for plaintiffs.

Lloyd H. Burke, U. S. Atty., San Francisco, Cal., for defendant.

LEMMON, District Judge.

No other country in the world has been so generous as the United States in the treatment of its service men and veterans. In the instant case, however, the plaintiffs are asking the Court to assist them in collecting from the Government sums that are not warranted by the National Service Life Insurance Act, 38 U.S.C.A. § 801 et seq., or the Civil Relief Act, 50 U.S.C.A.Appendix, § 501 et seq.

The plaintiffs contend that applicants for Government protection of their premium payments to insurance companies did not expect to reimburse the United States for that protection. In the plaintiffs' own pungent phrase, they expected the Government "to give them a free ride in their private insurance".

In the very first of the "General Provisions" of the Civil Relief Act, how-

otherwise consented to be sued with respect to insurance; and because there is no disagreement between the parties as to any claim under the insurance policies involved.

3. That the defendant has paid the full amount of all special dividends herein sued for, in cash or by applying them in repayment of the insured's debt to the defendant arising out of its payment to the insurer.

The case was tried to the Court without a jury.

2. *The Questions presented.*

The questions presented are the following:

1. Does the complaint state a cause of action within the jurisdiction of this Court?

2. Are the plaintiffs entitled to recover the amount of special dividends from the defendant?

3. *The Court Has Jurisdiction Of This Action.*

The defendant contends that "This action is not within the consent provisions of 817, 38 U.S.C.A."

Section 817 reads as follows:

"In the event of disagreement as to any claim arising under this subchapter, suit may be brought in the same manner and subject to the same conditions and limitations as are applicable to the United States Government life (converted) insurance under the provisions of sections 445 and 551 of this title."

The defendant argues that "although the right to receive the Special Dividend in suit may have *arisen out of,* or *by reason of,* the contract of insurance, the United States did not by the contract undertake in all events to pay a policy-holder a dividend". Reliance is placed upon the case of Candell v. United States, 10 Cir., 1951, 189 F.2d 442, 444, in which the Court construed Section 19 of the World War Veterans' Act, 1924, as amended, 38 U.S.C.A. § 445, which contains the following provision:

"The term 'claim', as used in this section, means any writing which alleges permanent and total disability at a time when the contract of insurance was in force, or which uses words showing an intention to claim *insurance benefits,* * * *." (Emphasis supplied.)

Regarding the above excerpt, the Court in the Candell case said:

"An insurance benefit means money or its equivalent paid as indemnity for a loss insured against. A dividend upon a National Service Life Insurance policy is paid under the terms of the contract which gives the insured the right to participate in gains and savings of the National Service Life Insurance Fund as they may be determined by the Administrator. Such a dividend is a return of premium. Such a dividend has no relation to the obligation to pay indemnity on the happening of the loss insured against."

With all due respect to the highest Federal Court in a sister circuit, this Court is unable to agree with the construction placed upon the word "insurance benefit". In 38 U.S.C.A. § 454a, which is a part of the very statute that the Court in the Candell case was construing, we find a reference to "overpayments of *dividends,* refunds, loans, *or other insurance benefits*". (Emphasis supplied.)

That Congress intended that the courts should have the right of review over the decisions of the Administrator of Veterans' Affairs on insurance matters generally was clearly brought out in United States v. Zazove, 1948, 334 U.S. 602, 611–612, 68 S.Ct. 1284, 1288, 92 L.Ed. 1601:

"On the other hand, we think it clear that an administrative regulation purporting to construe an ambiguous subsection of the National Life Insurance Act of 1940 is not automatically to be deemed valid merely because not plainly interdicted by the terms of the particular provision construed. The Administrator's general rule-making power, * * * is limited by the statute to

'such rules and regulations, not inconsistent with the provisions of this chapter, as are necessary or appropriate to carry out its purposes * * *.' Moreover, a 1946 amendment to § 608, designed to eliminate the finality of the decisions of the Administrator on insurance matters, amended the last sentence of § 608 to add the words set out in italics:

" 'Except in the event of suit as provided in section 617 hereof, *or other appropriate court proceedings,* all decisions rendered by the Administrator under the provisions of this Act, or regulations *properly* issued pursuant thereto, shall be final and conclusive on all questions of law or fact, and no other official of the United States, *except a judge or judges of the United States courts,* shall have jurisdiction to review any such decisions.'

"The extension of procedures available to secure judicial review, the interpolation of the word 'properly,' and the addition, presumably out of an abundance of caution, of the tautological phrase 'except a judge or judges of the United States courts' are indicative of congressional concern that the regulations of the Veterans' Administration be subject to more than casual judicial scrutiny when they are based upon a controverted construction of the statute." [1]

The defendant also contends that "The disagreement prerequisite to the jurisdiction of the court in an action brought under Sections 445 and 817, 38 U.S.C.A., does not exist in this case." It is asserted that the defendant has *paid* the dividend "to the use of each plaintiff by applying it to his indebtedness to the United States arising out of its payment * * * of insurance premiums" to the insurance company.

The plaintiffs, on the other hand, maintain "that when the Government paid only part of the dividend in cash, and exercised its claimed right of offset against the balance that (sic) it denied the claim, in part, as to such balance". In other words, the plaintiffs assert that they were not indebted to the defendant at all for the amounts so deducted, and that, even if they were so indebted, the defendant had no right of offset.

Indeed, the defendant itself has recently invoked the jurisdiction of a United States District Court in similar cases. See United States v. Nichols, D.C. Iowa 1952, 105 F.Supp. 543 (three separate actions).

■ The present suit is based upon "disagreement as to claim * * * under a contract of insurance" involving "insurance benefits", and therefore Section 445 is applicable. It is a "disagreement as to any claim arising under this subchapter (providing for National Service Life Insurance)" and therefore Section 817, supra, is applicable.

Accordingly, the Court holds that it has jurisdiction of this cause.

4. *The Defendant Was Entitled To Reimbursement Of The Amounts Paid Out By It Under The Guaranties.*

■ The central question in this litigation is whether the Relief Act of 1940, as originally enacted, imposed upon service men who put their private life insurance policies under the protection of that Act, a liability to repay the defendant for whatever the latter might have to disburse to the insurance companies under that statute.

This entire problem has been comprehensively discussed and, in this Court's view, has been correctly decided in two recent cases. The plaintiffs admit that both opinions are in point.

In United States v. Nichols, supra, 105 F.Supp. at page 559, the Court thus summarized the situation:

"These defendants applied for protection of their insurance policies under the 1940 Act. As a result

---

1. See also United States v. Roberts, 5 Cir., 1951, 192 F.2d 893, 896–897; Jensen v. United States, D.C.Utah, 1950, 94 F.Supp. 468, 470.

of the action of the United States in guaranteeing the payment of their defaulted premiums they received insurance protection while in the military service and for a period thereafter. Such insurance protection was a benefit received by them for which they owed the insurance companies which had provided such insurance protection. The United States was required to pay their debts to such insurance companies. Under common law principles the United States would be entitled to reimbursement. The Court is of the view that neither the provisions of the Soldiers' and Sailors' Civil Relief Act of 1940 nor its legislative history are indicative of a Congressional intent to abrogate the common law right of the United States to reimbursement.

"It is the holding of the Court that the United States is entitled to reimbursement from the defendants in these cases."

Each of the three defendants in United States v. Nichols appealed to the United States Court of Appeals for the Eighth Circuit. Each appeal was dismissed, "on dismissal of appeal filed by appellant." See 202 F.2d 956, 958.

The plaintiffs argue that "the provisions of Section 408 of the original (1940) Act giving the United States a first lien on the policy 'to indemnify it against loss' and the provisions in Sections 409, 410 and 411 [38 U.S.C.A. §§ 549–554 note] for application of the cash surrender value of lapsed policies against the Government's obligation are inconsistent with the assertion of *any* further right of indemnification, implied or otherwise".

A similar argument was made by the plaintiff in Morton v. United States, D.C. N.Y.1953, 113 F.Supp. 496, 500. There it was contended that "because the 1940 version of the statute contemplated reimbursement to the Government only to the extent that the cash surrender value of a given policy was sufficient, it necessarily follows that the Government would

have to bear any loss occasioned by a deficiency when the cash surrender value was measured against the Government's outlay."

While recognizing that "this argument is not lacking in plausibility", the Court observed:

"It is thought, however, that the answer lies in the realization that if it be allowed to prevail, there would necessarily be imputed to Congress an intention to make a gift to the holders of private insurance of any deficiency so arising, which would clearly indicate a legislative purpose to distribute treasury funds to a selected group among those who were called into the military service of the nation, because manifestly a considerable element would not have been able to provide themselves with private insurance policies, and therefore it seems that if the choice must be made between attributing to Congress a purpose to reimburse the Government eventually for funds advanced in the payment of premiums from any source whatever, and the discriminatory source of reimbursement which the plaintiff urges, it must be concluded that the intention was not to make a gift in whole or in part of money to only holders of private life insurance policies."

The defendant avers—and its statement is not challenged here—that "the cases hereunder considered are but three of hundreds, and perhaps thousands, which involve application of the basic principles announced in (such) Administrator's decisions."

In the absence of a definite Congressional mandate, this Court is not prepared to assist in this latest attempt to siphon off some more of the nation's already fast-ebbing public fisc.

5. *The Defendant Had The Right To Offset Any Dividends Payable Against The Plaintiffs' Indebtedness Arising Under The Relief Act.*

One point related to this case not covered in the Nichols and the Morton cases, supra, is that which deals with the de-

fendant's right to offset any dividends against the plaintiffs' debt arising from their failure to pay the premiums on their protected private policies. This question was not involved in the Nichols case, and in the Morton case the plaintiff admitted the defendant's right to offset National Service Life Insurance dividends in payment of debts owed to the United States.

The plaintiffs assert that "Section 454a of Title 38, U.S.C.A. * * * prohibits the collection by set-off or otherwise out of any veterans' benefits, including 'dividends * * * or other insurance benefits,' of any claim of the United States against the veteran 'except amounts due the United States by such beneficiary * * * by reason of overpayments or illegal payments made under such laws relating to veterans, to such beneficiary * * *.'"

At the outset, it will be helpful if there is cleared away a fallacy under which the plaintiffs seem to be laboring. They suggest that the Relief Act of 1940 "is not 'a law relating to veterans,' but one relating to persons on active military duty. If this is correct payments or overpayments under that Act were not 'overpayments * * * made under * * * laws relating to veterans.'"

If the World War Veterans' Act of 1924, of which Section 454a is a part, does not apply to persons on active military duty so far as the *exception* to the general exemption is concerned, by the same reasoning it does not apply to the *exemption* itself. Both the exemption and the exception thereto are part and parcel of the identical provision. Section 454a reads in part as follows:

"From and after October 17, 1940, this section shall be construed to prohibit the collection by set-off or otherwise out of any benefits payable pursuant to any law administered by the Veterans' Administration *and relating to veterans*, * * * of any claim of the United States or any agency thereof against * * * (b) any beneficiary * * * except amounts due the United States by

such beneficiary * * * by reason of overpayments or illegal payments made under such laws relating to *veterans*, * * *: Provided, however, That if the benefits be insurance payable by reason of yearly renewable term or of United States Government life (converted) insurance issued by the United States, the exemption herein provided shall be inapplicable to indebtedness existing against the particular insurance contract upon the maturity of which the claim is based, whether such indebtedness be in the form of liens to secure unpaid premiums, or loans, or interest on such premiums or loans, or indebtedness arising from overpayments of dividends, refunds, loans, or other insurance benefits: * * *." (Emphasis supplied.)

From the foregoing, it will be seen that the general exemption applies only to "benefits payable pursuant to any law administered by the Veterans' Administration *and* relating to veterans, * *." If the plaintiffs are not "veterans" within the meaning of Section 454a, they cannot enjoy this exemption from "collection by set-off". If so, there is no need of resorting to the *exception* (to the exemption) urged by the defendant.

Indeed, it is only when an applicant for benefits under the Relief Act of 1940 *survives* active military service— and thus becomes a "veteran"—that the defendant's guaranty becomes actually effective. When the insured dies while still in military service, "the amount of any unpaid premiums, with interest at the rate provided for in the policy for policy loans, shall be deducted from the proceeds of the policy * * *." 50 U.S. C.A. Appendix, § 549, "Historical Note". In the latter event, there is no longer need for a guaranty.

When the defendant paid the plaintiffs' premiums and the plaintiffs failed to reimburse the defendant, there resulted, in effect, an "overpayment" to the plaintiffs within the meaning of Section 454a of 38 U.S.C.A.

In Administrator's Decision No. 742, dated April 1, 1947, General Omar N. Bradley quoted with approval the following language found in Administrator's Decision No. 607, dated November 24, 1944:

"It has consistently been held in construing this specific language that anything of value which a veteran secures under color of the laws relating to veterans and to which he is not specifically entitled by such laws is an overpayment within the meaning of the statute * * *"

General Bradley continued:

"As said in Administrator's Decision No. 607, if the Government pays a veteran's obligation pursuant to law and the veteran refuses to pay the debt therefrom arising, he is in a very real sense overpaid and there is an overpayment within the meaning of the exemption statute, supra, 38 U.S.C.A. 454a."

In United States v. Citizens Loan & Trust Co., 1942, 316 U.S. 209, 214, 62 S.Ct. 1026, 1029, 86 L.Ed. 1387, the Court said, referring to a holding of the Veterans' Administration:

"This administrative interpretation over a period of 17 years controlling the settlement of thousands of cases is entitled to great weight, 'and such construction is not to be overturned unless clearly wrong or unless a different construction is plainly required.' United States v. Jackson, 280 U.S. 183, 193, 50 S.Ct. 143, 74 L.Ed. 361."

Furthermore, it is the opinion of this Court that the Administrator's construction was a reasonable one. The sovereign's right to a fair offset should not be lightly disregarded. Certainly that right is at least equal to that of a private suitor, unless unequivocally curtailed by statute.

In United States v. Munsey Trust Co., 1947, 332 U.S. 234, 239, 67 S.Ct. 1599, 1602, 91 L.Ed. 2022, the Court said:

"The government has the same right 'which belongs to every creditor, to apply the unappropriated moneys of his debtor, in his hands, in extinguishment of the debts due to him.'" (Cases cited.)

 Both on reason and authority, therefore, this Court is of the opinion that the defendant was correct in offsetting any dividends payable against the plaintiffs' indebtedness arising under the Relief Act of 1940.

Certain subordinate points raised by the plaintiffs, such as the intention of Congress not to "increase" the "liability" of servicemen when it enacted the Civil Relief Amendments of 1942, have been carefully considered by the Court, and have been found to contain no merit.

6. *Conclusion.*

Accordingly, it is the judgment of this Court that the premiums and the interest paid to the insurer by the defendant at the plaintiffs' request constituted a debt due by them to the said defendant; and that the latter had the right to offset any payable dividends against such indebtedness of the plaintiffs.

The defendant will lodge appropriate proposed findings of fact and conclusions of law.