## MORTON v. UNITED STATES.
### Civ. No. 11444.

United States District Court
E. D. New York.
July 16, 1953.

W. Brown Morton, Jr., New York City, for plaintiff.

Leonard P. Moore, U. S. Atty., New York City, for Eastern District of New York.

David C. Byrd, Attorney, Veterans Administration, Washington, D. C., for defendant.

BYERS, District Judge.

This is a motion for summary judgment in an action in which recovery is sought of the amount of the special dividends declared upon the plaintiff's National Service Life Insurance Policies N–6 077 915 and N–5 931 465 amounting in all to $416.50 which have been paid to the Treasurer of the United States instead of the plaintiff, because of payments of premiums made by the United States to the New York Life Insurance Company on a policy issued on the plaintiff's life; this was done pursuant to provisions of the Soldiers & Sailors Relief Act, found in Tit. 50 U.S.C.A., War and National Defense Appendix, §§ 540–548.

The question for decision is whether the plaintiff became so indebted to the Government by reason of those outlays that their total amount could be legally offset against the dividends earned on the plaintiff's National Service policies.

The issue is the same, although somewhat differently presented, as that decided in United States v. Nichols, D.C., 105 F. Supp. 543; that opinion was written by Judge Graven, and contains so searching a study of the legislative history of the statute, and so careful a consideration of the arguments for and against the claim of the Government for reimbursement (to which it became entitled in terms by the 1942 amendment to the Act), that the present problem is concededly one of electing whether or not to follow that decision.

This motion for judgment is mutually and separately presented, and to facilitate its disposition, the following stipulation of facts has been filed, and accepted as the basis of decision:

"Stipulation

"1. That the plaintiff, Edward T. Morton, is a citizen of the United States and was at the commencement of this action a resident of the Eastern District of New York.

"2. That plaintiff was in the active military service of the United States from October 30, 1942, to December 17, 1945; that he was on active duty with the United States Air Force when this action was commenced; and that he is presently on active duty with the Air Force and is now stationed at Lages A.F.B., Azores, Portugal.

"3. That on January 30, 1941, plaintiff executed an application on Veterans Administration Insurance Form 380 requesting protection for his $5,000 insurance policy No. 11 761 050 with the New York Life Insurance Company under Title IV of the Soldiers' and Sailors' Civil Relief Act of 1940 (54 Stat. 1178, October 17, 1940).

"4. That said application was approved by the Veterans Administration on March 24, 1941, effective as of the premium payable on March 1, 1941.

"5. That subsequent to plaintiff's discharge from the service on December 17, 1945, i. e., on June 1, 1946, the Veterans Administration wrote plaintiff a letter advising him that he might leave his policy under the protection of the Soldiers' and Sailors' Civil Relief Act for a maximum period of two years after the date of his discharge or he could drop that protection as indicated in that letter, * * * and, if the government should be required to pay the insurance company on its guaranty, plaintiff would then owe the government the sum expended.

"6. That plaintiff did not pay the premium on policy No. 17 761 050 with the New York Life Insurance Company falling due March 1, 1941, nor any of those premiums falling due thereafter; and that his policy No. 17 761 050 with the New York Life Insurance Company was terminated by that company on December 17, 1947, two years following plaintiff's discharge from the service.

"7. That following the termination of policy No. 17 761 050 with the New York Life Insurance Company, that company rendered its statement of account to the Veterans Administration showing that the unpaid premiums on that policy from March 1, 1941, until its termination amounted to $697.74 and that, after crediting plaintiff's premium account with the cash surrender value of the policy in the amount of $257.20,

there remained a balance due the insurance company of $440.54.

"8. That the defendant has paid the sum of $440.54 to the New York Life Insurance Company in full satisfaction of its obligation under the Soldiers' and Sailors' Civil Relief Act of 1940 for the guaranty of policy No. 17 761 050 with that company.

"9. That plaintiff was duly advised by the Veterans Administration of the payment to the New York Life Insurance Company of the sum of $440.54 and written demand was made for reimbursement, but that plaintiff has refused to pay all or any part of said sum which defendant claims plaintiff owed to it on account of its guaranty of the premiums on plaintiff's policy with said company.

"10. That plaintiff's National Service Life Insurance policies N–6 077 915 and N–5 931 465 participated in the special dividend declared on said policies through the anniversary day of the latter policy in 1948, i. e., March 17, 1948, in the amount of $236.50.

"11. That the special dividend in the amount of $236.50 was paid to the Treasurer of the United States as an offset against the sum of $440.54 which the defendant claimed was due it on account of its guaranty of the premiums on plaintiff's policy No. 17 761 050 with the New York Life Insurance Company, and plaintiff was notified thereof in writing.

"12. That plaintiff has made written demand of the Veterans Administration for the payment of the special dividend in the amount of $236.50, but that the Veterans Administration has refused to pay the same to the plaintiff.

"13. That plaintiff's National Service Life Insurance policy No. N–5 931 465 participated in the special dividend declared by the Administrator of Veterans Affairs on such policies for the period from the anniversary day of said policy in 1948 through the anniversary day of the policy in 1951 in the amount of $180.00.

"14. That the special dividend in the amount of $180.00 has now been paid to the Treasurer of the United States as an offset against the sum of $204.04 which defendant claimed remained due it on account of its guaranty of the premiums on plaintiff's policy No. 17 761 050 with the New York Life Insurance Company.

"15. That the claim which was asserted by the defendant against the plaintiff for $440.54 (and which is presently asserted for the balance of $24.04) was asserted as a claim for a debt which defendant contends may be collected by setoff or independent collection proceedings, including suit.

"16. That defendant contends that the sum expended by it in fulfilling its guaranty of the premiums on plaintiff's policy No. 17 671 050 with the New York Life Insurance Company was a debt owed the United States by the plaintiff and that plaintiff's National Service Life Insurance dividends were properly offset against it.

"17. That plaintiff admits the defendant's right to offset National Service Life Insurance dividends in payment of debts owed the United States but plaintiff specifically denies that there was or is any debt owed to the United States by him on account of the defendant's guaranty of the premiums on plaintiff's policy No. 17 761 050 with the New York Life Insurance Company.

"18. That this stipulation is made without prejudice to the defenses heretofore raised in the answer of the defendant.

"19. That the essential facts of this case are not in dispute and that the Court may render its decision and judgment on the legal issues involved in this case on the parties' cross motion for summary judgment."

Jurisdiction.

Point II of the Government's brief challenges the jurisdiction of the Court, and that question will be promptly disposed of.

The complaint alleges that the action is brought pursuant to the provisions of Tit. 38 U.S.C.A. §§ 445 and 445c, and Tit. 28 U.S.C. §§ 1346(a) (2) and 1402(a).

The first citation, in material part, reads as follows:

"§ 445. *Actions on claims; jurisdiction; parties; procedure; limitation; witnesses; definitions*

"In the event of disagreement as to claim, including claim for refund of premiums, under a contract of insurance between the Veterans' Administration and any person or persons claiming thereunder an action on the claim may be brought against the United States either in the district court of the United States for the District of Columbia or in the district court of the United States in and for the district in which such persons or any one of them resides, and jurisdiction is hereby conferred upon such courts to hear and determine all such controversies. * * *

"The term 'claim', as used in this section, means any writing * * * which uses words showing an intention to claim insurance benefits, and the term 'disagreement' means a denial of the claim by the Administrator * * *."

" § 445c. A denial of a claim for insurance by the Administrator * * * shall constitute a disagreement for the purposes of section 445 of this title. * * *"

Title 28 U.S.C. § 1346 headed, "United States as defendant" reads:

"(a) The district courts shall have original jurisdiction, concurrent with the Court of Claims, of:

* * * * * *

" (2) Any other civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."

§ 1402 entitled, "United States as defendant" reads:

"(a) Any civil action against the United States under subsection (a) of section 1346 of this title may be prosecuted only in the judicial district where the plaintiff resides."

█ If there is any doubt that this action is authorized by the statutory provisions first above quoted, concerning which no opinion is expressed, this decision will pro-

ceed upon the theory that the plaintiff has successfully invoked the jurisdiction contemplated by Title 28, § 1346(a) (2) and § 1402(a).

The case of Mara v. United States, D. C., 54 F.2d 397, was decided in 1931 before the revision of the Judicial Code now found in Title 28, and is not believed to be current.

Perhaps this Court is somewhat influenced by the reflection that since the United States was the plaintiff in the Nichols case, supra, which went to judgment on the merits, a plea to the jurisdiction in an action by a plaintiff against the United States which raises the same issues, does not come with very good grace.

Compare Lynch v. United States, 292 U. S. 571, 54 S.Ct. 840, 78 L.Ed. 1434.

Merits

The argument upon which the plaintiff relies to indicate that the decision in the Nichols case should not be followed comes down to this:

That the contract between the plaintiff and the United States, by virtue of which the premiums upon his private insurance policy were paid, was Veterans Administration Insurance Form 380, signed by him, which was as follows:

"I, the insured under the above identified policy issued by the above named insurer, do hereby make application to have said policy protected in accordance with the provisions of the Soldiers' and Sailors' Civil Relief Act of 1940 and to that end I do hereby consent and agree to such modification of the terms of the policy as are made necessary by the provisions of the Act; with the understanding that the insurer (company or association), by receiving and filing this application, shall be deemed to have assented thereto, to the extent, if any, to which the policy is within the provisions of the Act."

Plaintiff contends that this document establishes the only contract here involved and that the argument adopted in the Nichols case that there is an implied duty in the case of a guaranty of reimbursement to the guarantor which the law implies should not

have been relied upon since the engagement of the parties was in writing and precisely defined all elements of their relationship, and that because the 1940 version of the statute contemplated reimbursement to the Government only to the extent that the cash surrender value of a given policy was sufficient, it necessarily follows that the Government would have to bear any loss occasioned by a deficiency when the cash surrender value was measured against the Government's outlay.

It must be recognized that this argument is not lacking in plausibility.

It is thought, however, that the answer lies in the realization that if it be allowed to prevail, there would necessarily be imputed to Congress an intention to make a gift to the holders of private insurance of any deficiency so arising, which would clearly indicate a legislative purpose to distribute treasury funds to a selected group among those who were called into the military service of the nation, because manifestly a considerable element would not have been able to provide themselves with private insurance policies, and therefore it seems that if the choice must be made between attributing to Congress a purpose to reimburse the Government eventually for funds advanced in the payment of premiums from any source whatever, and the discriminatory source of reimbursement which the plaintiff urges, it must be concluded that the intention was not to make a gift in whole or in part of money to only holders of private life insurance policies.

The premiums were paid, as has been seen, at the instance of the plaintiff and for his benefit, and it is thought that no hardship or injustice is involved in expecting him to repay the amount so advanced.

The fact that the plaintiff was advised by the letter referred to in Paragraph 5 of the stipulation of the two year extension arising from the 1942 amendment and took advantage thereof by failure to disclaim anything in that connection, has its place in appraising the impact of the 1942 amendment.

Viewing the legislative history in the light of the discussion in the Nichols case, it is the present view that the 1942 Act should be construed as a clarification of the 1940 Act rather than as an extension thereof so as to increase or change the obligation of the plaintiff created by his signing Form 380.

It results that the plaintiff's motion for summary judgment must be denied, and that of the defendant must be granted. Settle order.