**UNITED STATES v. GIBSON.**
**No. 13670.**

United States Court of Appeals
Ninth Circuit.
Sept. 23, 1953.

Rehearing Granted Jan. 15, 1954.

See, also, D.C., 101 F.Supp. 225.

John A. Carver, U. S. Atty., Sylvan A. Jeppesen, Asst. U. S. Atty., Boise, Idaho, Herman J. Rossi, Asst. U. S. Atty., Wallace, Idaho, John G. Laughlin, Attorney, Department of Justice, Washington, D. C., for appellant.

Wm. S. Hawkins, E. L. Miller, Coeur d'Alene, Idaho, for appellee.

Before HEALY, BONE and POPE, Circuit Judges.

POPE, Circuit Judge.

At some time prior to 1947 the Veterans Administration made an award of disability compensation to Virgil Thomas Gibson. The amount allowed was increased from time to time until in June, 1947, he was receiving $41.40 per month, an amount stated and determined to be due him for "service-connected disability". The veteran had also claimed pension benefits arising out of "non-service-connected disabilities". On May 26, 1947, the Veterans Administration sent him a letter respecting his claim which stated in part: "Your claim was recently reviewed. The report of physical examination was carefully considered, together with all other evidence in your file. The decision, based on this evidence, is that there should be no change in the previous rating in regard to your service incurred disabilities. Rating action in regard to your application for pension for disabilities not incurred in service is being deferred pending receipt of the enclosed employment affidavit. You should execute and return this affidavit as soon as possible."

Under date of October 21, 1947, Gibson received, upon the Veterans Administration's printed form headed: "Award of Disability Pension (Not Service Connected)", notice that "you are awarded pension in the amount of $60.00 monthly from June 13, 1947, on account of non-service-connected disability". Thereafter, and until the death of the veteran on December 8, 1949, a period of approximately 30 months, he continued to receive the monthly checks for $41.40 each. He also received, during the same period, the sum of $60 per month. The $41.40 checks were marked for "compensation". The $60 checks, with the exception of the first two, (also marked "compensation") were marked for "pension".

Claiming that payments totaling $1,209.44 during this period were made by mistake, the United States brought this action to recover that amount.[1] The gist of the allegation is that the later "original 6B4 award was erroneously approved in favor of Virgil Thomas Gibson instead of an amendment to the original 6B5 award."

Paragraph XIII of Veterans Regulations Numbered 10[2] provides in part: "Not more than one award of pension, compensation, or emergency officers' or regular retirement pay, shall be made concurrently to any person based on his own service." Appellant says that because of this prohibition "the two awards made * * * were * * * contrary to law and clearly erroneous". But the complaint itself concedes that it is entirely proper to amend, and thereby increase, an award.[3] And such is disclosed by the amount of recovery sought, which is the sum of the $41.40 payments, not the $60 payments.[4]

In thus conceding the propriety of the $60 payments the Government must consider that in making the $60 award the Veterans Administration did, as a matter of fact, amend the award. Its theory is necessarily that what was intended to be done on October 21, 1947, when notice of the $60 award was given, was to amend the $41.40 award by increasing it in the amount of $18.60 per month.

But there is a complete failure of proof that such was the intended amendment. The record is much more consistent with a conclusion that the intended action, and what actually was done, was to increase the amount previously allowed by $60 per month, so as to pay the veteran a monthly total of $101.40. What makes this seem reasonable is that the two amounts were clearly awarded for different types of disability. And the October 21, 1947, award expressly states that it was an award of a disability pension "not service-connected".[5] This negatives any inference that part of it was a continuation of the old award for service connected disability. And there is absolutely no basis for inferring an intention wholly to drop the award for such service connected disability which had been recognized since shortly after 1924, when such payments began.

The only ground upon which the Gov-

---

1. The complaint alleged: "Dual payments of compensation and pension were paid to Virgil Thomas Gibson by the Veterans Administration for the periods as herein set forth. That is to say, an award of disability compensation (6B5) was approved in favor of Virgil Thomas Gibson under which payments were made at the monthly rate of $41.40 commencing prior to June 13, 1947, through November 30, 1949. Subsequently, an original 6B4 award was erroneously approved in favor of Virgil Thomas Gibson instead of an amendment to the original 6B5 award. The payments were made thereunder at the monthly rate of $60.00 for the period between June 13, 1947, through November 30, 1949, resulting in dual payment for this period."

2. The regulations appear in Tit. 38 U.S. C.A. following section 745.

3. See note 1, supra.

4. If the regulation quoted were construed to exclude the possibility of amendment of an award, then the complaint should have been drawn on the theory that the $60 second award was the erroneous one.

5. For statutory reference to service-connected and non-service-connected disability, see 38 U.S.C.A. §§ 700 and 703 (c).

ernment could hope to recover here, would be by proving that certain sums had been paid to decedent by mistake which, in equity and good conscience, he should have returned. But even if we could infer here that remittances to Gibson should have been by one monthly check, instead of by two,[6] there is complete lack of proof that any amount received by Gibson was paid by mistake, or in error.

The principal contention here is that the trial court was in error in arriving at this manifestly correct evaluation of the facts, which led it to hold that "the plaintiff has failed to carry its burden of proof", because, says appellant, sections 705 and 11a–2 of Title 38 U.S.C.A., provide that "All decisions rendered by the Administrator * * * shall be final and conclusive" and no court shall have jurisdiction to review any such decision.[7] It is thus the appellant's theory that if the Administrator makes a finding that a certain sum, naming it, has been paid by mistake, then the court must, without further inquiry, enter a judgment upon the basis of that finding.[8]

■■ We do not think that the facts of this case bring it within the provisions of either section 705 or 11a–2. The first of these sections speaks of decisions of the Administrator "under the provisions of sections 701–703, 704, 705, 706, 707–715, 716–721 of this title and sections 30a, 485 of Title 5 or the regulations issued pursuant thereto". We find here no decision as to how much the veteran was justly entitled to receive. The decision here claimed to be final is one that the Veterans Administration previously made a certain mistake. This is not a matter related to any of the sections or regulations named. Again, § 11a–2 refers to decisions on a question of law or fact "concerning a claim for benefits or payments", etc. This section was enacted out of consideration of the fact that such a claim by a veteran is one for a mere gratuity. Hahn v. Gray, D.C.Cir., 203 F.2d 625. But this claim against the administratrix of the veteran's estate is not "a claim for benefits" under the act.

However, even if sections 705 and 11a–2 had reference to a case of this kind, their provisions would not help appellant here, for the record discloses no such finding as would compel a judgment for the plaintiff.

The only showing made as to action by the Veterans Administration was contained in Plaintiff's Exhibit 1 which disclosed that on June 29, 1950, the "Central Committee on Waivers and Forfeitures" decided against waiver of recovery of the sum here sued for. This was by way of approval of a similar decision of the Committee on Waivers of the Seattle District Office. This made reference to a report of a field examination dated June 2, 1950, disclosing that the decedent's estate had sufficient assets from which the amount claimed could be recovered. That report,

---

6. Regulation XIII, supra, calls for "not more than one award", etc. There appears no express prohibition against remitting the proceeds of one award by two checks.

7. Section 705 reads: "All decisions rendered by the Administrator of Veterans' Affairs under the provisions of sections 701–703, 704, 705, 706, 707–715, 716–721 of this title and sections 30a, 485 of Title 5, or the regulations issued pursuant thereto, shall be final and conclusive on all questions of law and fact, and no other official or court of the United States shall have jurisdiction to review by mandamus or otherwise any such decision."

Section 11a–2 reads: "Notwithstanding any other provisions of law, except as provided in section 445 of this title, as amended, and in section 817 of this title, the decisions of the Administrator of Veterans' Affairs on any question of law or fact concerning a claim for benefits or payments under any Act administered by the Veterans' Administration shall be final and conclusive and no other official or any court of the United States shall have power or jurisdiction to review any such decisions."

8. For a case which seems to proceed on that theory see United States v. Gudewicz, D.C.E.D.N.Y., 45 F.Supp. 787.

also a part of the exhibit, was authorized by a request, dated April 17, 1950, for such an examination by the Chief of the Dependents and Beneficiaries Division Claims Service, at the Seattle District Office. Appended to it and dated March 24, 1950, was a statement respecting the awards and the payments signed by one R. Anderson. It is headed "Chief, Beneficiaries Accounts Section". It is not apparent whether Anderson held that title, or whether the statement was a memorandum addressed to such Chief.

█ Passing the question whether these inter-office communications could be said to come within the meaning of the words "decisions rendered by the Administrator" in § 705, supra, it is clear that the only facts recited therein are those contained in the March 24, 1950, statement. It is set forth in full in the margin.[9] It finds that "a dual payment was made". Since both amounts, the $41.40 and the $60, were paid each month, this, of course, is unquestioned. Then follows the statement that instead of preparing the 6B4 award, "an amended award should have been made". The most that this could mean is that the award should have been amended so as to include the entire amount to be paid in one instrument or "paycard". Again it is stated: "The error appears due to an erroneous original award approved by the Adjudication Division when an amended award should have been made." But granting that proper procedure required that the new award be marked "amended", and that its amount be the combined or total amount to be allowed the veteran, there is still no statement as to what amount was intended to be allowed by way of amendment. Again, there is no finding that this amount was $18.60, or that it was $60.00. The most glaring omission is the failure to make the simple statement that the $41.40 payments were continued through mistake, or error. In view of the limitation of the findings to the statement that "an amended award should have been made", and in the absence of any finding as to what the increase in payment to be accomplished by amendment was intended to be, the conclusion that "an adjustment of the account" resulted in an overpayment of $1225.44 is simply a *non sequitur*.

We hold that the judgment of the district court was right, and it is affirmed.

9. "Chief, Beneficiaries Accounts Section

March 24, 1950

33

Virgil Thomas Gibson    XC539 583

$1209.44    Code 6B5

Dual payment on 6B4 and 6B5 awards for period 6–13–47 through 11–30–49.

Virgil Thomas Gibson

Reference is made to the disability compensation award (6B5) approved in favor of Virgil Thomas Gibson, under which payments were made through November 30, 1949 at the monthly rate of $41.40.

An audit of the account of the above named veteran reveals that an original disability pension award (6B4), was approved in his favor and payments were made from 6–13–47 through 11–30–49 at the monthly rate of $60.00. Inasmuch as payments were made on the 6B5 award as well as on the 6B4 award, a dual payment was made for the period 6–13–47 through 11–30–49.

The preparation of the original award (6B4) was in error, inasmuch as a 6B5 award previously existed. An amended award should have been made and Finance could then have changed the paycard then in effect from 6B5 to 6B4.

An adjustment of the account resulted in an overpayment of $1225.44, which has been reduced to $1209.44 by applying $16.00 representing the accrued due and unpaid the veteran on his 6B4 award.

The error appears due to an erroneous original award approved by the Adjudication Division when an amended award should have been made. Records pertaining to the above account were received in this office on February 8, 1950 from VA Regional Office, Boise.

The veteran became deceased on December 8, 1949.

(Signed)   R. Anderson."