**HORMEL et al.**

v.

**UNITED STATES.**

United States District Court,
S. D. New York.

June 3, 1954.

---

1. Now 18 U.S.C.A. § 3287.

Nathaniel F. Bedford, New York, N. Y., for plaintiffs.

J. Edward Lumbard, U. S. Atty. for the S. D. of New York, New York City, for the United States.

Samuel R. Pierce, Jr., Asst. U. S. Atty., New York City, of counsel.

David C. Byrd, Atty., Veterans' Administration, Washington, D. C., David A. Turner, Associate Gen. Counsel, Veterans' Administration, Washington, D. C.

DIMOCK, District Judge.

Plaintiffs sue respectively for $428.77 and $398, alleged to be due them as balances of the 1948 special dividends on their policies of National Service Life Insurance. The Government contends that nothing is due because the amounts sued for are properly withheld from plaintiffs' dividends since plaintiffs owe the Government the amounts which they now seek to recover. The Government's claim is that plaintiffs owe the amounts in question because the Government has paid those amounts to the New York Life Insurance Company for their account pursuant to the Governmental protection of servicemen's life insurance prescribed by the insurance sections of the Soldiers' and Sailors' Civil Relief Act of 1940 and its amendment in 1942. Oct. 17, 1940, c. 888, §§ 400–414, 54 Stat. 1183, 50 U.S.C.App. old §§ 540–554; Oct. 6, 1942, c. 581, § 13, 56 Stat. 773, 50 U.S.C.App. §§ 540–548.

### The Court's Power To Act.

At the threshold the Government challenges the jurisdiction of the court. Jurisdiction of the action brought by plaintiff Hormel would seem to be clearly granted by 28 U.S.C. section 1346, headed "United States as defendant", which reads:

"(a) The district courts shall have original jurisdiction, concurrent with the Court of Claims, of:

\* \* \* \* \* \*

"(2) Any other civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied

contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."

We must, however, as to plaintiff Stilson, who is a resident of New Jersey, take into account section 1402(a) which reads:

"(a) Any civil action against the United States under subsection (a) of section 1346 of this title may be prosecuted only in the judicial district where the plaintiff resides."

■■■ The action was brought by plaintiff Hormel "on behalf of himself and all others similarly situated" and Stilson joined as a party plaintiff pursuant to leave of this court granted by Judge Samuel H. Kaufman, 11 F.R.D. 376. As I read Judge Kaufman's opinion he granted the application on two grounds: one, that, in a "spurious class suit" such as this, venue should not be a barrier to intervention and, the other, that this action was brought pursuant to 38 U.S.C. section 817,[1] which made section 445[2] applicable, so that the venue limitation which 28 U.S.C. section 1402 (a) put on suits under section 1346(a) did not concern him. The Government points out that, subsequent to Judge Kaufman's decision, section 445 of title 38 U.S.C. was held inapplicable to a suit involving a National Service Life Insurance dividend in Candell v. United States, 10 Cir., 189 F.2d 442. The Court of Appeals there held that the "benefits" which section 445 referred to did not include the right to participate in dividends. I am persuaded, however, that an action to recover a dividend under a National Service Life Insurance policy, if it cannot be brought under section 445 of title 38, can be brought under section 1346(a) of title 28. Incidentally Judge Kaufman's first ground of decision, that venue is not a barrier to intervention in a spurious class action, would remain intact even if the action were brought under section 1346(a) of title 28 rather than under section 445 of title 38 as he held.

I am supported in my view that the action may be maintained under section 1346(a) of title 28 by Morton v. United States, D.C.E.D.N.Y., 113 F.Supp. 496, where Judge Byers entertained an action for exactly the same relief as in this one upon the theory that the plaintiff had successfully invoked jurisdiction under that section.

■■■ Defendant says, however, that unless the action is brought under section 445 the position of the Veterans' Administration cannot be reviewed in court. Authority for this is said to be found in section 11a–2 of title 38 U.S.C., Oct. 17, 1940, c. 893, § 11, 54 Stat. 1197, which reads as follows:

"Notwithstanding any other provisions of law, except as provided in sections 445 and 817 of this title, the decisions of the Administrator of Veterans' Affairs on any question of law or fact concerning a claim for benefits or payments under any Act administered by the Veterans' Administration shall be final and conclusive and no other official or any court of the United States shall have power or jurisdiction to review any such decisions."

The Government's point is not well taken. The decisions of the Administrator that are made final and conclusive are decisions "on any question of law or fact concerning a claim for benefits or payments under any act administered by the Veterans' Administration." The Government cannot be relying upon the finality of a decision with respect to a claim of an insured for benefits or payments under a policy of National Service Life Insurance because there is no controversy over any such claim. It is conceded that plaintiffs are entitled to the full dividend under such policies. The decision that the Administrator has made and of which they complain is the decision that they owe

1. Aug. 1, 1946, ch. 728, § 14, 60 Stat. 788.

2. July 3, 1930, ch. 849, § 4, 46 Stat. 992.

the Government reimbursement for payments made by the Government under a different Act, the Soldiers' and Sailors' Civil Relief Act. I cannot bring myself to believe that the cited section means that the Administrator of Veterans' Affairs can decide that there is money due from servicemen to the Government under the Soldiers' and Sailors' Civil Relief Act and come into court and obtain a judgment against the servicemen upon the sole allegation that his determination has been made final and conclusive.

: ▇▇ A debt asserted by the Government is not a "claim for benefits or payments" within the meaning of section 11a–2 of Title 38. This provision has been construed by two courts of appeals as limited to claims by veterans for gratuitous benefit payments, and as inapplicable to rights asserted by the Government. United States v. Gibson, 9 Cir., 207 F.2d 161, 163; Hahn v. Gray, 92 U.S.App.D.C. 188, 203 F.2d 625, 626. But cf. United States v. Gudewicz, D.C. E.D.N.Y., 45 F.Supp. 787. The predecessor provision on the conclusiveness of decisions of the Administrator of Veterans' Affairs, Section 5 of the Economy Act, March 20, 1933, 48 Stat. 9, 38 U.S. C.A. § 705, was similarly interpreted by the Supreme Court as applicable only to gratuities sought by veterans. Lynch v. United States, 292 U.S. 571, 587, 54 S.Ct. 840, 78 L.Ed. 1434. Further, the Government's construction as applied to this case raises the serious question whether the Fifth Amendment would not invalidate a law which would permit the Government to recover a judgment against a citizen without giving him an opportunity to challenge the bare assertion of an administrative officer that money was due and owing. See Hahn v. Gray, 92 U.S.App.D.C. 188, 203 F.2d 625, 626, supra. Where there are two reasonably possible constructions of a federal statute, it is the duty of a federal judge to choose the one which does not raise constitutional doubts. See Dennis v. United States, 341 U.S. 494, 501, 71

S.Ct. 857, 95 L.Ed. 1137. American Communications Ass'n v. Douds, 339 U.S. 382, 407, 70 S.Ct. 674, 94 L.Ed. 925; note, "Supreme Court Interpretation of Statutes to Avoid Constitutional Decisions", 53 Columbia L.Rev. 633.

Being thus satisfied of my power to pass on the merits of the controversy, I shall proceed to do so.

### Contentions of the Government on the Merits.

The sums that the Government seeks to recover by way of set-off in each case are what the Government alleges to be the amounts paid to the New York Life Insurance Company for the account of plaintiffs pursuant to the governmental protection of servicemen's life insurance prescribed by the insurance sections of the Soldiers' and Sailors' Civil Relief Act of 1940 and its amendments in 1942. The fundamental question presented is whether amounts so paid by the Government are recoverable. The question is complicated by the fact that in 1942 there was a complete revision of the scheme for the protection of the life insurance of servicemen. Under the 1942 amendment, there would be no doubt that the Government would be entitled to the recovery which it here seeks in its answer. The Government contends, however, that the terms of the original Act of 1940 permit such a recovery and that in any event plaintiffs here consented to the application of the terms of the 1942 Act.

The Soldiers' and Sailors' Civil Relief Act of 1940 provided that no policy which had been brought under its benefits should lapse or be forfeited for the non-payment of premium during the period of the insurer's military service or during one year after its expiration. Oct. 17, 1940, c. 888, § 405, 54 Stat. 1184, 50 U.S.C.App. old § 545, quoted in footnote 3 infra. By obtaining from the Veterans' Administration acceptance of his application, a serviceman could obtain this protection for a commercial life insurance policy to the extent of

$5,000. Oct. 17, 1940, c. 888, § 402, 54 Stat. 1183, 50 U.S.C.App. old § 542. Provisions were made in the 1940 Act for the statement of an account between each insurer and the Government at the end of the expiration of one year after the Act ceased to be in force and for the payment of balances due the insurers on account of unpaid premiums. Oct. 17, 1940, c. 888, §§ 411, 412, 54 Stat. 1185, 50 U.S.C.App. old §§ 551, 552. Section 551 is quoted in note 7 infra.

In no place in the 1940 Act is the obligation assumed by the Government referred to as a guarantee and in no place is there any reference to recovery from the servicemen of any amounts paid by the Government on account of the obligation assumed.

Under the 1942 amendments, the scheme was radically changed. The obligation of the Government was referred to as a guarantee, payments were to be made by the Government to the insurers at the termination of the period of protection of each policy and the Government was given an express right of recovery against the insured serviceman. Oct. 6, 1942, c. 581, § 13, 56 Stat. 775, 50 U.S.C.App. § 546. The 1942 amendment contains provisions intended to deal with policies which had been protected under the system of the 1940 Act. It provides that the former provisions shall "remain in full force and effect with respect to all valid applications for protection executed prior to the date of enactment of the Soldiers' and Sailors' Civil Relief Act amendments of 1942 and all policies to which such applications pertain shall continue to be entitled to the protection granted thereby." It contains the further provision, however, with respect to policies accepted under the old provisions, that any insurer may by surrender of certificates which were issuable under the 1940 Act "be entitled to the guarantee of unpaid premiums and interest thereon and the mode of settlement" as provided by the amended law. Oct. 6, 1942, c. 581,

§ 13, 56 Stat. 776, 50 U.S.C.App. § 548, subdivisions (1) and (2).

The New York Life Insurance Company, the insurer here concerned, took the necessary procedure to entitle itself to the guarantee of unpaid premiums and the mode of settlement for the old policies which were provided by the amendment.

Both the old law and the new provided in substance that, at the expiration of the period of protection, if the insured did not pay up the amount of the past due premiums with the policy loan rate of interest the policy would lapse. The 1940 Act contained a formula for a single statement of account between the Government and the insured to which more reference will hereafter be made. The 1942 amendment provided that, with respect to each policy, the Government would pay the insurer at the time of its lapse the past due premiums with interest at the policy loan rate insofar as they exceeded the surrender value of the policy. It is payments so made that the Government here seeks to recover by way of set-off.

### The 1940 Act Creates No Obligation To Reimburse The Government.

■ As above indicated, the Government's first position is that it need not rely on the 1942 amendments in order to recover from those insured the difference between the past due premiums with policy loan rate interest and the surrender value. To support this position, the Government must find the basis in the 1940 Act for the necessary implication that such an obligation is imposed upon those insured. Plaintiffs argue that there is no basis for an implication of an obligation upon those insured to reimburse the Government, whether in an amount equal to that provided for under the 1942 amendments and here sought, i. e., the excess of the past due premiums with policy loan interest over the surrender value of the policy, or in any other amount. Since there is nothing expressed in the statute

permitting any recovery by the Government against those insured, any right of recovery must be based on implication. Any implication of the right to such recovery must be grounded upon the position of the Government as a guarantor who has made good upon its guarantee. In such case, the guarantor is entitled to recover over from the principal obligor the amount which the guarantor has been required to pay. Here, however, as plaintiffs point out, there is no way of determining under the provisions of the 1940 Act how much of the total which the Government is required to pay is payable for the account of any particular one of those insured. This seems to me to establish plaintiff's position that these insured are under no obligation to reimburse the Government in the amount sought or in any other amount.

The fact that Congress omitted to provide a plan under which the amount of any recovery from the insured might be computed demonstrates that Congress did not intend that there should be any recovery from the insured.

The structure of the 1940 Act does not provide for payments by the Government in satisfaction of the premium liability of each insured but rather a lump sum payment to the insurer. This is not a merely verbal difference. The lump sum settlement provided for is an amount which differs from the total that would be recovered if the Government should succeed in recovering in every case what it here seeks.

The 1940 Act contemplates a moratorium on lapse of protected policies during military service and for one year thereafter[3]. The insurer by a system involving the issuance of certificates[4],

---

3. 50 U.S.C.App. old § 545 which reads as follows:

"No policy which has not lapsed for the nonpayment of premium before the commencement of the period of military service of the insured, and which has been brought within the benefits of this article, shall lapse or be forfeited for the nonpayment of premium during the period of such service or during one year after the expiration of such period: Provided, That in no case shall this prohibition extend for more than one year after the date when this Act ceases to be in force." Oct. 17, 1940, c. 888, § 405, 54 Stat. 1184.

4. 50 U.S.C.App. old §§ 546 and 547 which read as follows:

"Within the first fifteen days of each calendar month after the date of approval of this Act until the expiration of one year after the date when this Act ceases to be in force every insurance corporation or association to which application has been made as herein provided, for the benefits of this article, shall render to the Veterans' Administration a report, duly verified, setting forth the following facts:

"First. The names of the persons who have applied for such benefits, and the face value of the policies in respect of which such benefits have been applied for by such persons, during the preceding calendar month.

"Second. A list as far as practicable of the premiums in respect of policies entitled to the benefits of this article, which remain unpaid on the last day of the preceding calendar month, which day is at least thirty-one days after the due date of the premiums, provided such premiums have not previously been so reported as in default.

"Third. A list of premiums which, having been previously reported as in default, have been paid by the policyholder or someone on his behalf in whole or in part during the preceding calendar month.

"Fourth. A computation of the difference between the total amount of defaulted premiums therein reported and the total amount of premiums paid as therein reported, after having been previously reported as in default. From this sum shall be deducted the total sum of any premiums previously reported as in default, upon policies in respect of which the Veterans' Administration has, since the date of such report, rejected an application for the benefits of this article. The final sum so arrived at shall be denominated the monthly difference." Oct. 17, 1940, c. 888, § 406, 54 Stat. 1184.

"The Administrator of Veterans' Affairs shall verify the computation of monthly difference reported by each insurer and shall, within ten days thereafter, deliver each month to the proper

is entitled to 3% interest upon past due premiums. If a protected policy matures by death, the amount of the past due premiums plus interest at the policy loan rate is collected from the face amount of the policy which would otherwise go to the beneficiary and is deducted from the amount which is earning interest at 3%[5]. If the protection of a policy ceases because the insured has been out of the service for a year, the policy lapses unless the insured pays to the insurer the past due premiums with interest at the policy loan rate. If the policy lapses, the insurer pays the insured the surrender value, if any remains after deducting the amount of the past due premiums with interest at the policy loan rate[6].

One year after the date when the Act ceases to be in force, an account is stated between the insurer and the United States[7]. In that account the insurer is, in effect, credited with the amount of the past due premiums with 3% interest and the United States is credited with the amount of the surrender values of the lapsed policies provided that in no case shall the amount be greater than the sum of the past due premiums on the policy concerned with interest at the policy loan rate. The theory of the credit to the Government must be that the insurer has the benefit of the cash surrender value of each lapsed policy, except to the extent that the value was paid or is payable to the insured be-

officer of such insurer, a certificate in the amount of the monthly difference certified in respect of each insurer. Such certificate shall be signed by said Administrator in the name of the United States, shall be in such form as the Administrator shall determine, shall be payable to the insurer within sixty days after the approval of the statement of account, as provided in section 411 hereof [section 551 of this Appendix], and shall bear interest at a rate to be prescribed by the Secretary of the Treasury, payable with the principal. Such certificate shall not be transferred except with the approval of said Administrator and shall remain with the insurer until settlement is made in accordance with this article." Oct. 17, 1940, c. 888, § 407, 54 Stat. 1185.

5. 50 U.S.C.App. old § 549 which reads as follows:
"Deduction of unpaid premiums from proceeds of policies. In the event that the military service of any person being the holder of a policy receiving the benefits of this article shall be terminated by death, the amount of any unpaid premiums, with interest at the rate provided for in the policy for policy loans, shall be deducted from the proceeds of the policy and shall be included in the next monthly report of the insurer as premiums paid. Oct. 17, 1940, c. 888, § 409, 54 Stat. 1185."

6. 50 U.S.C.App. old § 550 which reads as follows:
"Lapsing of policy for failure to pay past due premiums upon termination of service. If the insured does not within one

year after the termination of his period of military service pay to the insurer all past due premiums with interest thereon from their several due dates at the rate provided in the policy for policy loans, the policy shall at the end of such year immediately lapse and become void, and the insurer shall thereupon become liable to pay the cash surrender value thereof, if any: *Provided*, That if the insured is in the military service when this Act ceases to be in force, such lapse shall occur and surrender value be payable at the expiration of one year after the date when this Act ceases to be in force. Oct. 17, 1940, c. 888, § 410, 54 Stat. 1185."

7. 50 U.S.C.App. old § 551 which reads as follows:
"Accounts stated between insurers and United States. At the expiration of one year after the date when this Act ceases to be in force there shall be an account stated between each insurer and the United States, in which there shall be credited to the insurer the total amount of the certificates held as security under this article, together with accrued interest to the date of the account, and in which there shall be credited to the United States the amount of the cash surrender value of each policy lapsed or forfeited as provided in section 410 [section 550 of this Appendix], but not in any case a greater amount on any policy than the total of the unpaid premiums with interest thereon at the rate provided for in the policy for policy loans. Oct. 17, 1940, c. 888, § 411, 54 Stat. 1185."

cause in excess of the amount of the past due premiums with policy loan rate interest. The interest rate on the insurer's credit was fixed at 3% by the Secretary of the Treasury pursuant to a provision of the 1940 Act. The policy loan rate in the cases at bar was 5%. It is the combined effect of this disparity in rates and the lump sum settlement method that renders the total amounts payable by the Government different from the total amounts recoverable if it should succeed in such actions as this.

A simplified example will serve to demonstrate this.

Suppose that Hormel and Stilson, whom I will call H and S, were the only two policyholders of the insurer whose policies were protected and that both policies were still protected when the time came for the statement of the account between the Government and the insurer.

For a first example let us assume that H has past due premiums of $100 with policy loan interest at 5% for 1 year and that his policy has a surrender value of $200, while S has past due premiums of $200 with policy loan interest at 5% for 2 years and that his policy has a surrender value of $175.

The amount payable by the Government to the insurer would be calculated thus:

| Cr. to Insurer | | | Cr. to Government | | | |
|---|---|---|---|---|---|---|
| H's past due premiums | $100. | | H's surrender value | | | $200. |
| Interest for 1 year at 3% | | 3. | H's past due premiums Interest for 1 year at 5% | $100 | 5. | |
| | | | | | | 105. |
| | | | Surrender value exceeds premiums and interest by | | | 95. |
| | | | So Government is credited with premiums and interest | | | 105. |
| S's past due premiums | 200. | | S's surrender value | | | 175. |
| Interest for 2 years at 3% | | 12. | S's past due premiums Interest for 2 years at 5% | 200. | 20. | |
| | | | | | | 220. |
| | | | Premiums and interest exceed surrender value by | | | 45. |
| | | | So Government is credited with surrender value | | | 175. |
| | | 315. | | | | 280. |
| | | | Insurer's excess credit due from Government | | | 35. |
| | | 315. | | | | 315. |

While, under the foregoing example, the Government would pay the insurer $35 it would, under the theory of its claim here, collect $45 from S, being the amount by which past due premiums with interest at the policy loan rate exceed surrender value.

A second example can be stated in tabular form thus:

| Cr. to Insurer | | Cr. to Government | | |
|---|---|---|---|---|
| H's past due premiums $150. | | H's surrender value | | $151. |
| Interest for 2 years at 3% | 9. | H's past due premiums Interest for 2 years at 5% | $150. 15. | |
| | | | | 165. |
| | | Premiums and interest exceed surrender value by | | 14. |
| | | So Government is credited with surrender value | | $151. |
| S's past due premiums | 200. | S's surrender value | | 250. |
| Interest for 2 years at 3% | 12. | S's past due premiums Interest for 2 years at 5% | 200. 20. | |
| | | | | 220. |
| | | Surrender value exceeds premiums and interest by | | 30. |
| | | So Government is credited with premiums and interest. | | |
| | | | | 220. |
| | 371. | | | 371. |
| | | Insurer's excess credit due from Government | | 0 |
| | 371. | | | 371. |

Again, while under the foregoing example the Government would pay the insurer nothing, it would, under the theory of its claim here, collect $14 from H, being the amount by which past due premiums with interest at the policy loan rate exceed surrender value.

The fact that the total recovery by the Government from those insured, under the theory of its demand in this case, differs from the amount which the Government was required to pay under the Act of 1940 to the insurer does not necessarily mean that there is no theory of recovery from those insured which would not precisely reimburse the Government. Let us see whether a formula can be developed from the terms of the 1940 Act which will determine the exact amount which the Government is required to pay on account of each insured as part of the total payment required to be made to the insurer.

The net result of the terms of the 1940 Act, as simplified in the examples that I have given, is that the Government would recover from those insured, under its present theory, an aggregate amount in excess of the amount paid by the Government to the insurer.

816

Under this simplification the excess would always be the exact difference between 3% interest and 5% interest on the amount of the past due premiums. There are other factors, later to be discussed, which prevent this from being a completely accurate formula, but even if that were the only factor in the difference, there is no rule by which the Government's theory could be amended so as to determine just how much had been paid on account of each insured.

In the first example the total payable to the insurer was $35 and the total recoverable on the Government's theory from those insured was $45. The difference, $10, is precisely the difference between interest at 3% and 5% on $300, the total of the past due premiums, as follows:

|  |  |  | 3% | 5% |
|---|---|---|---|---|
| H's past due premiums, $100 for 1 year | | | $3. | $5. |
| S's " " " 200 " 2 years | | | 12. | 20. |
|  |  |  | 15. | 25. |
|  |  |  |  | 15. |
| Difference | | | | $10. |

Likewise in the second example the total payable to the insurer was zero and the total recoverable on the Government's theory from those insured was $14. The difference of $14 is precisely the difference between interest at 3% and 5% on $350, the total past due premiums.

In the first example, to avoid an excess recovery from S, it would be necessary to reduce to 2½% the interest rate on the past due premiums sought from him and, in the second example, to avoid an excess recovery from H, it would be necessary to reduce that rate to ⅓ of 1%.

It thus appears that there is no method which will permit us, by the application of a fixed percentage to the past due premiums of those insured whose past due premiums with interest at the policy loan rate exceed their surrender value, to arrive at a total recovery against them which will equal the amount payable by the Government to the insurer.

The examples which I have given have been oversimplified and, in actual practice, there is further accentuation of the lack of relationship between the total recoveries sought against those insured and the amount payable to the insurer. An instance is in the case of the determination, for the purposes of the settlement between Government and insurer, of what I have called the past due premiums. As stated above, this is done through the medium of certificates issued to the insurer. When the time comes for the settlement between insurer and Government, the amount with which the insurer is credited is the amount of the certificates with 3% interest. Under § 406 of the Act of 1940[8], the amount of the certificates is made up by monthly statements of newly past due premiums less premiums previously reported as past due but later paid. Under § 409 of the old Act[9], where a protected policy matures by death, the amount of the past due premiums plus interest at the policy loan rate is deducted from the amount paid and is expressly required to be treated, for the purpose of making up the amount of the certificates, as premiums paid.

It is to be noted that, in cases where a policy matures by death, the insurer must deduct from the amount of the certificates, not only the past due premiums which have been treated as the basis for certificates, but also the in-

8. 50 U.S.C.App. old § 546, quoted in footnote 4 supra.

9. 50 U.S.C.App. old § 549, quoted in footnote 5 supra.

terest thereon at the policy loan rate which has not been so treated. Because of the deduction of that interest, therefore, the principal amount of the certificates at the time of final settlement between the insurer and the Government is bound to be to that extent less than the amount of the total past due premiums. Since the Government thus credits the insurer with something less than the total of the past due premiums in fixing the amount payable to the insurer, we cannot say even that the difference between the amount payable to the insurer from the Government and the total amount recoverable on the Government's theory from those insured will always be equal to the difference between interest on the past due premiums at 3% and 5%. We do not have even that specious relationship between the two that seemed to be indicated by my oversimplified examples.

■ I recognize that the conclusion that I have reached, that the Government may not recover from those insured who were protected under the Soldiers' and Sailors' Civil Relief Act of 1940 the amounts of their past due premiums with policy loan interest less the surrender value of the policy, runs counter to three decisions of other district courts. United States v. Nichols, D.C.N.D. Iowa, 105 F.Supp. 543; Morton v. United States, D.C.E.D.N.Y., 113 F. Supp. 496; Plesha v. United States, D.C. N.D.Cal., 1953, 123 F.Supp. 593. So far as appears from these opinions, in none of the cases was it called to the attention of the court that the amount sought to be recovered by the Government had no relation to the amount allocable against the particular insured out of the amount payable by the Government under the 1940 Act to the insurer.

Plaintiffs Have Not Consented That The 1942 Act Shall Apply In Their Cases Either For The Entire Protection Period Or For The Last Year.

■ So much for the contention that plaintiffs are under an obligation created by the 1940 Act to pay to the Government the difference between the amount of past due premiums with policy loan interest less the surrender value of the policies. The question arises whether, even if the Act of 1940 created no such obligation, such an obligation was not created when plaintiffs failed, when notified of the terms of the 1942 Act, to disclaim their application. The 1942 amendment increased the period of protection to the expiration of two years after the expiration of military service instead of one year as under the 1940 Act.[10] As will hereinafter more particularly appear, the New York Life Insurance Company, the insurer here concerned, with respect to its policies which had been protected under the provisions of the old 1940 Act, elected to become entitled to the guarantee of unpaid premiums and interest and the mode of settlement provided in the amendment of 1942. Soon after the time of the separation from the service of each of those insured who had been protected under the Act of 1940, the Government wrote them, including these plaintiffs, stating that they might leave their policies under the protection of the Soldiers' and Sailors' Civil Relief Act for a maximum period of two years from the date of their discharge but that protection would cease at the end of that period. It explained that the insured would owe the insurer the difference between the past due premiums with interest at the policy loan rate and the surrender value and that any part of that difference left unpaid would be paid by the United States to whom the insured would then owe whatever payment the Government had made on their account. The letter stated that it was the privilege of the insured to have the policy withdrawn from the protection of the Act at any time within the two year period with the consent of the Veterans' Administration.

Neither of these plaintiffs took any action under that letter and their failure to act is relied upon as acceptance of its terms.

10.   50 U.S.C.App. § 543, Oct. 6, 1942, c. 581, § 13, 56 Stat. 775.

The best refutation of such an argument is contained in the letter itself which permitted withdrawal only upon condition of consent by the Veterans' Administration. The Government's theory requires a voluntary acceptance of the terms of the new Act. By imposing a condition upon rejection of the coverage of the Act the Government kept any so-called acceptance of it from being voluntary.

There is another and more precise refutation of the argument of voluntary acceptance of the new Act. A provision of the 1942 amendment, 50 U.S.C.App. § 542, Oct. 6, 1942, c. 581, § 13, 56 Stat. 774, describes the manner in which an insured may obtain the benefits of the article. It provides that "[a]ny writing signed by the insured and identifying the policy and insurer, and agreeing that his rights under the policy are subject to and modified by the provisions of" the article of the Soldiers' and Sailors' Civil Relief Act with respect to insurance "shall be sufficient as an application for the benefits of this article". These words of the statute exclude the possibility of adoption of the 1942 amendment by anything less than a writing signed by the insured. The insured's inaction when a notice is served on him, no matter how explicit, is insufficient.

It is true that my conclusion means that these plaintiffs will each have enjoyed protection for one year for which they have not paid and the free affording of which was not within the contemplation of Congress under the 1940 Act. The period of protection under section 405 of the 1940 Act, 50 U.S.C.App. old § 545, quoted in footnote 3 supra, continued during one year after the expiration of the period of military service of the insured. The period of protection under the corresponding section 403 of the 1942 Act, 50 U.S.C.App. § 543 [11], continues during two years after such expiration. The fact that the insurer has collected from the Government premiums for this extra year indicates that it would probably have paid the death bene-

fit under the policy if death had occurred during the extra year. Plaintiffs here, however, never requested the Government to pay for protection for the extra year. Their applications under the 1940 Act covered only one year after the close of their military service. As I have concluded above, their failure to apply to have their policies withdrawn from this protection when notified that they could do so did not have the effect of subjecting them to the 1942 Act as a whole. Nor is there any reason for concluding that it had the effect of subjecting them to the particular provision of the 1942 Act which made the protection period last for two years after military service instead of one.

The Insurer's Adoption Of The 1942 Act Did Not Render Plaintiffs Liable To The Insurer Or The Government For Premiums For The Second Year After Service.

■ Nor did the action of the insurer in adopting the 1942 Act render those insured under the policy protected by the 1940 Act liable for premiums for an extra year. Section 408(1) of the 1942 Act, [12] declared that all policies to which applications under the 1940 Act pertained should "continue to be entitled to the protection granted thereby." Section 408(2) permitted the insurer to elect to surrender the certificates issued under the 1940 Act and thereupon "be entitled to the guarantee of unpaid premiums and interest thereon and the mode of settlement for such policies as provided by this article, as amended". The insurer in this case made that election. By doing so it did not affect the rights of those insured. Under section 408(1) they were still entitled to the protection granted by the 1940 Act, no more, no less. It is true that the Government's new guarantee to the insurer covered, in terms, the premiums for the extra year. It is also true that Congress in passing the 1940 Act did not intend that those insured should enjoy that protection free of charge. What happened, though, was that Congress agreed that the Govern-

---

11. Oct. 6, 1942, c. 581, § 13, 56 Stat. 775.

12. Oct. 6, 1942, c. 581, § 13, 56 Stat. 776, 50 U.S.C.App. § 548(1).

ment would guarantee the premiums for the extra year if the insurer would surrender the certificates. The fact that the insurer obtained that guarantee did not change its relation to those insured so as to create an obligation on their part to pay the premiums. See New York Consolidated Laws, c. 28, Insurance Law, § 208. Thus the insurer had no right against those insured for the premiums for the extra year to which the Government could be subrogated by operation of law or with which it could be vested by assignment.

Since I have concluded that the 1940 Act does not entitle the Government to the recovery which it seeks from plaintiffs, it is unnecessary for me to consider plaintiffs' contention that information circulated by the Government as to the rights of the insured under the 1940 Act estopped the Government from seeking recovery under it.

I have carefully considered the contentions of the Government not here discussed and have found them without merit.

Judgment will be entered for plaintiffs.

Submit findings and conclusions.