**Paul E. PLESHA, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 14499.**

United States Court of Appeals Ninth Circuit.

Nov. 30, 1955.

White, Harber & Schei, Lawrence A. Schei, Sacramento, Cal., for appellants.

Warren E. Burger, Asst. Atty. Gen., Paul A. Sweeney, Samuel D. Slade, B.

Jenkins Middleton, Lester S. Jayson, Sp. Assts. to Atty. Gen., David A. Turner, Associate Gen. Counsel, Veterans Administration, Washington, D. C., Lloyd H. Burke, U. S. Atty., San Francisco, Cal., Robert E. Woodward, Asst. U. S. Atty., Sacramento, Cal, David C. Byrd, Atty., Veterans Administration, Washington, D. C., for appellee.

Before DENMAN, Chief Judge, and ORR and POPE, Circuit Judges.

DENMAN, Chief Judge.

This is an appeal from a judgment denying appellant, a veteran of the Second World War, recovery of $221.05, the unpaid portion of a special dividend due appellant under the provisions of his National Service Life Insurance policy. The District Court denied recovery, 123 F.Supp. 593, setting off that amount as owed by appellant to the Government for his obligation to reimburse it for sums paid to the California Western States Life Insurance Company to compensate it for coverage extended to appellant during World War II under the provisions of the Soldiers' and Sailors' Civil Relief Act of 1940, 54 Stat. 1178, 1179, 1183–1186; 50 U.S.C.A.Appendix, §§ 510, 540–554.

That Act provided, in part, that no insurance policy taken out before military service would lapse for the nonpayment of premiums while the insured was in service. If the serviceman died and the policy matured, all the unpaid premiums plus interest at the policy loan rate were to be deducted from the payment to the beneficiaries. If the serviceman desired to continue his policy after discharge, and he had not paid premiums while he was in service, he was required to pay all the back premiums plus interest at the policy loan rate. If, as here, the serviceman allowed his policy to lapse after discharge and did not pay the back premiums within one year after his discharge the United States would compensate the insurer. The Government would receive credit for the cash surrender value of the policy.

The United States contends that the lower court lacked jurisdiction to consider appellant's claim because no provision of the National Service Life Insurance Act created jurisdiction in United States District Courts to entertain actions for National Service Life Insurance dividends. See 38 U.S.C.A. §§ 817, 445 as construed by Candell v. United States, 10 Cir., 1951, 189 F.2d 442. Assuming this contention to be true, it cannot be said that Congress intended 38 U.S.C.A. §§ 817, 445 to be the exclusive source of jurisdiction for claims to such dividends,[1] and it is obvious that such jurisdiction was created by the Tucker Act, 28 U.S.C. § 1346(a) (2), which provides:

"The district courts shall have original jurisdiction, concurrent with the Court of Claims, of:

\*    \*    \*    \*    \*    \*

"(2) Any other civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." [2]

The question here is did the Soldiers' and Sailors' Civil Relief Act of 1940 create a personal liability between a veteran and the United States where the veteran had allowed his policy to lapse after discharge and the United States had compensated his insurer for

---

1. Congress vested exclusive jurisdiction in the District Courts under 38 U.S.C.A. §§ 817, 445 to determine claims to benefits for contingencies insured against. Peyton v. United States, 100 F.Supp. 823, 120 Ct.Cl. 722, certiorari denied, 1952, 343 U.S. 909, 72 S.Ct. 639, 96 L.Ed. 1326. There is no insurance on the dividends here claimed.

2. See Morton v. United States, D.C.E.D. N.Y.1953, 113 F.Supp. 496; Hormel v. United States, D.C.S.D.N.Y.1954, 123 F. Supp. 806, construing the same provision for jurisdiction.

its coverage during the Second World War.

The District Court applied a rule of interpretation of the ambiguous provisions of the legislation and the Congressional comment thereon adverse to the veterans for whom the legislation was created, classifying them as amongst those who are engaged in an "attempt to syphon off some more of the nation's already fast-ebbing public fisc." [123 F.Supp. 597.]

With this we do not agree. Rather we think Congress was contemplating the veterans incapacitated by bullet-inflicted wounds, or weakness from treatment while held as enemy prisoners and those having families and dependents to support in occupations lost with their savings exhausted during their war activities and the physicians and dentists who have lost their patients and the lawyers who have lost their clients and the business men who have lost their enterprises.

This we think is what the Supreme Court also had in mind when it established its rule of liberal construction favorable to the veteran in construing the Soldiers' and Sailors' Civil Relief Acts. "The Soldiers' and Sailors' Civil Relief Act is always to be liberally construed to protect those who have been obliged to drop their own affairs to take up the burdens of the nation." Boone v. Lightner, 1943, 319 U.S. 561, 575, 63 S.Ct. 1223, 1231, 87 L.Ed. 1587; Le Maistre v. Leffers, 1947, 333 U.S. 1, 6, 68 S.Ct. 371, 92 L.Ed. 429.

The Soldiers' and Sailors' Civil Relief Act of 1940 contained no provision for reimbursement of the United States where it had compensated the veteran's insurance company for coverage given to him while he was in service. There were no provisions specifying when the United States was to be repaid, how it was to be repaid, or how much it was to be repaid. The form on which appellant applied to have his policy protected by the Act, which was prepared by the Veterans Administration, stated only as follows regarding reimbursement of the United States:

"In consideration hereof, I hereby consent and agree that the United States shall be protected in the amount of any premiums and interest guaranteed on the above numbered policy in the event of its maturity as a claim, or out of the cash surrender value of the policy, at the expiration of the period of protection under the Act."

The serviceman bringing his policy under the protection of the Act could have read the Act, the Regulations under it and this application form without finding anything to indicate that he was personally liable to reimburse the United States for sums it paid his insurance company in the event he did not continue the policy and pay the back premiums within a year from his discharge.

The theory of the United States is that the Soldiers' and Sailors' Civil Relief Act of 1940 created a contract of guaranty between the insured serviceman, his insurer and the Government, or that the United States is entitled to recover on an implied contract for paying the serviceman's insurance premiums at his request. In short, the gaps in the Act are to be filled in by resort to the common law. The United States points to Section 408 of the Act which provided:

"To indemnify it against loss the United States shall have a first lien upon any policy receiving the benefits of this article, subject only to any lien existing at the time the policy became subject to this Act, and no loan or settlement or payment of dividend shall be made by the insurer on such policy which may prejudice the security of such lien."

It urges that a lien is only a security device to enforce a debt rather than a remedy, and so Congress must have intended a common law debt to arise between the veteran and the Government. However, the lien provision could have

been intended only as a protection of the Government's interest in the cash surrender value of the policy which was credited to it if the veteran did not continue the policy by paying the back premiums within one year after his discharge.

There is an element within the Act which weakens the Government's theory of a common law right to reimbursement. Congress provided that insurance companies were to be compensated one year after the date when the Act ceased to be in force. There was to be a running balance of charges against the United States and credits to it. The United States was to be charged with the unpaid premiums of servicemen who held policies with a particular company covered by the Act. It was to be credited with the amount of unpaid premiums plus interest at the policy loan rate (this averaged 4 to 6% per annum) if a serviceman died, and the policy matured entitling the insurance company to deduct this amount from the benefits paid, or if a serviceman reinstated the policy upon discharge and paid the back premiums plus interest. At the end of each month a monthly difference was taken, and if the United States owed a company money, a certificate bearing interest at 3% was to be issued to it. As a result of compensating insurance companies on certificates based on the total experience of a particular company with all the servicemen who held its policies covered by the Act, it is difficult to determine the amount the United States actually expended on any individual veteran. Furthermore, the United States might make a profit if it recovered the back premiums plus the policy loan rate as it claims here. Reinstatements and deaths of those covered by a particular company's policies might offset the amount of back premiums unpaid at the time of final accounting. Because of this situation the Court in Hormel v. United States, D.C.S.D.N.Y. 1954, 123 F.Supp. 806, found that Congress had not intended to create a personal liability to reimburse the United States where a veteran had not paid the back premiums on his policy within one year after discharge.

The United States argues that profit was unlikely since the cash surrender values of the policies covered under the Act were built up during the War, and even if some profit resulted, a common law guarantor is entitled to a charge for his services. While this may be true, such provisions for compensating insurance companies in the act make the Government's theory of common law liability doubtful.

Appellant contends that the United States cannot enforce a common law right to reimbursement unless specifically authorized to do so by statute. They rely on United States v. Gilman, 1954, 347 U.S. 507, 74 S.Ct. 695, 98 L.Ed. 898. There the United States, having been held liable for the negligence of its employee in a suit under the Federal Tort Claims Act, sued to recover indemnity from that employee. The Court held that the United States could not recover. There were delicate policy questions of the relationship between the Government as an employer and its employee better decided by Congress than courts. The legislative history did not convince the Supreme Court that Congress had intended to create such a common law right of reimbursement.

The Gilman case does not preclude the Government's common law recovery here. However, the relationships between the United States and its servicemen and veterans cannot be said to be totally unlike that between it and its civil servants in so far as imposing personal liability is concerned. The Gilman case, and the rule of liberal construction in favor of servicemen and veterans previously discussed, require a strong showing from the legislative history that Congress intended to impose a personal liability for reimbursement not spelled out in the statute.

■ We are unable to find such a strong showing from the legislative history that Congress intended to impose a common law liability on veterans who

did not pay their back insurance premiums plus interest within one year after their discharge from service.

The Soldiers' and Sailors' Civil Relief Act of 1918, 40 Stat. 440, 444–447, contained the same insurance provisions as the 1940 Act. As originally drafted it provided that policies would not lapse for nonpayment of premiums while the insured was in service, and that the premiums would be considered a loan against the policy's cash surrender value. The insurance industry objected since this would give the veteran an option whether to pay the back premiums or not, and leave the insurers without a means to assure themselves of compensation for the risks they had taken. The provisions under consideration here were designed to meet that objection. However, this history could support either the view that the veteran's option to pay or not pay his back premiums had been taken away or the view that the option had been left, but the insurance companies were assured that they would receive compensation from either the veteran or the Government. There is reason to believe that the draftsman of the 1918 bill thought that the cash surrender value which was subject to the Government's lien would be sufficient to recoup whatever the Government might have to pay out. See Hearings and Memoranda before the Subcommittee of the Committee on the Judiciary, U. S. Senate, 65th Cong., 1st and 2d Sess., on S. 2859 and H.R. 6361, pp. 134–135. Veterans Administrator's Decision No. 742 summarizes our conclusions about the 1918 legislative history:

"It is equally true that statements may be abstracted from the hearings which tend to support arguments that the transaction did and that it did not create a debt."

The 1940 legislative history is equally as indefinite. There is a debate on the floor of the House between Mr. Voorheis and Mr. Arends, the floor manager of the bill, wherein it is stated several times that the veteran will have to reimburse the Government for payments made to his insurance company. 86 Cong.Rec. pp. 13132–13133. On the other hand, Senate Report on the 1940 bill indicates that the Government is to be reimbursed only from the cash surrender value of the policy. S.Rep. No. 2109, 76th Cong., 3d Sess., p. 3.

In 1942 the Soldiers' and Sailors' Civil Relief Act was amended to specifically provide for personal liability on the part of the veteran for amounts paid by the United States to his insurance company. 56 Stat. 769, 773–776; 50 U.S.C.A.Appendix, §§ 541–548. The amendment was called a "clarification". S.Rep. No. 716, 77th Cong., 1st Sess., p. 3. However, the indebtedness provision in the Senate bill developed as follows: As the bill was first introduced it read:

"* * * The amount paid by the United States to the insurer shall become a debt due to the United States by the insured * * *."

Later a phrase was inserted between the words "insurer" and "shall" which read "* * * on account of applications made subsequent to approval of this Act." Finally this was changed to read: "* * * on account of applications approved under the provisions of this article, as amended". See 50 U.S.C.A. Appendix § 546. If veterans were liable for such payments under the 1940 Act, the additional language limiting the indebtedness provision to applications received after the effective date of the 1942 Act would have been pointless.

■ Congress may or may not have intended that the United States enjoy a common law recovery. However, we must construe statutes such as the Soldiers' and Sailors' Civil Relief Act of 1940 liberally to benefit servicemen and veterans. We must, under the theory of the Gilman case, not find common law liability in favor of the Government where it is not provided for in the statute, where it is not an "established type of liability," [347 U.S. 507, 74 S.Ct. 696], and where the legislative history is inconclusive as to whether Congress intended such a liability. And finally, we

are unwilling to impose such a liability on veterans where the application forms to bring their policies under the protections of the 1940 Act limited the United States' right to reimbursement to situations other than the one presented here. Because of these reasons we disagree with the decision of the Tenth Circuit in United States v. Hendler, 1955, 225 F.2d 106, which ignored the Supreme Court decisions above cited on their rule of liberal interpretation for the veteran.

The judgment is reversed and the District Court ordered to enter judgment for appellant.