STRAUS BROTHERS COMPANY ET AL. *v.* FISHER ET AL.

[No. 24,481.    Filed October 11, 1928.]

*Arthur W. Parry,* for appellants.
*Aiken, Grant & Aiken,* for appellees.

PER CURIAM.—The appellant company has a farm at the source or commencing point of a public drain known as "the Fachs ditch," and its coappellant has the

one next below, across which the drain runs for a quarter of a mile, while the farms owned by appellees are crossed by, or otherwise drain into it, along its course for a mile or more after it has passed appellants' farms. Appellants filed before the board of commissioners a petition that contained all the usual formal allegations of a drainage petition, and averred that petitioners were respectively the owners in fee simple of certain described lands affected by and originally assessed for the construction of the drain and its branches, descriptions of which were set out; that said drain was established in 1901 by certain proceedings before the county board of commissioners; that the drain and its branches "as originally constructed are not sufficient to perform the drainage for which they were designed and intended; that because of the smallness of the tile originally placed in said drains and of one or more places in said drains where the same do not flow in a straight or natural direction, the same are not sufficient to carry off the volume of water which drains into them from the lands intended to be drained thereby; that because of such facts large pools and quantities of water are permitted to gather on lands belonging to these petitioners and others, which lands were intended to be drained by said drains and which lands were assessed for the construction thereof . . . and are not drained off by said drains for a period of a week after the same have gathered, thus causing unhealthy conditions and damaging and destroying the crops on said lands. . . . That said drains can be made sufficient to perform the drainage for which they were designed and intended, and can be made sufficient and adequate . . . by increasing the size of the tile in said drains . . . and by changing the course of the drain in one or more places. . . . That the altering and repairing (as proposed) would be of great public utility, . . . that the public health will be

improved and that the highways . . . will be benefited,"
etc. Ten of the twelve owners of lands that drain into this
drain and its branches having filed a statement, in writing,
duly signed by them, that they were residents of Allen
County and "constituted more than two-thirds of the own-
ers of lands affected by the proposed drainage," and owned
lands abutting on more than fifty per cent. of the total
length of the drain and branches and that they "respect-
fully remonstrated against the construction of the pro-
posed ditch, and the repairing and altering of the Francis
Fachs ditch and branches," and asking that the petition
be dismissed, the board of commissioners entered an
order dismissing the proceeding. An appeal to the cir-
cuit court was duly taken, and, on proper request, that
court made a special finding of facts, on which it stated
conclusions of law that §6196 Burns 1926 (Acts 1919
p. 426, amending Acts 1913 p. 152, which amended §19,
Acts 1907 pp. 508, 535) was repealed, by implication,
by Acts 1915 p. 417, before being amended, that this
was not a proceeding under or authorized by that sec-
tion, and that the remonstrance was sufficient and the
cause should be dismissed, to each of which conclusions
of law. the petitioners excepted. Sandwiched in be-
tween the last conclusion of law, to the effect that the
cause should be dismissed, and the notation of excep-
tions to the conclusions, the order-book entry contained
the statement "and the same is hereby dismissed."
But no formal judgment of dismissal or for costs was
entered, nor anything more than the statement which
preceded by several lines the signature of the judge to
the special finding and conclusions of law. A motion
for a new trial for the alleged reasons that the decision is
not sustained by sufficient evidence and is contrary to
law was overruled, and appellants excepted. Their as-
signment of errors challenges each conclusion of law,
the overruling of their motion for a new trial, and the

refusal to grant a change of venue from the new judge who succeeded to his office by election after the cause was tried and after the motion for a new trial had been filed.

Appellees have suggested in their brief that no final judgment was rendered by the trial court. But this is a cause that originated before a board of commissioners, where but little formality is required, and a conclusion of law "that said cause should be dismissed" ·being followed by a recital in the order-book entry that "the same is hereby dismissed," and subsequent entries stating that, upon overruling the motion for a new trial, the court granted time to file bills of exceptions, and that an appeal to the Supreme Court was prayed and was granted upon filing, within a time fixed, a bond, which was duly filed within that time, we must accept the recital as constituting an entry of judgment dismissing the action, even though the entry be informal and incomplete. The point that there was no final judgment is not well taken.

Section 6196, *supra*, before its amendment in 1919, had consisted of the act of 1913 p. 152, *supra*, which purported to amend §19 of the act of 1907, as indicated above. It was the amended act of 1913 (p. 152) which the trial court concluded "was repealed by implication by ch. 107, p. 417 of the acts of 1915," although the latter act, while expressly providing by §35 (p. 452) "that §§10, 11, 12, 13, 14, 15, 16 and 20 of An Act Concerning Drainage and Repealing laws in Conflict, approved March 11, 1907," as well as three other acts, should "be and the same are hereby repealed," did not mention or refer to §19, nor the act of 1913 by which it had been amended, nor indicate a purpose to repeal the section as so amended, unless by reason of what it enacted being inconsistent with the provisions of the amended

§19, or because its provisions covered the entire subject-matter of that section.

Section 19, as so amended in 1913, provided that the owner of any tract of land affected by and assessed for the construction or tiling of a public drain under any law might file with the board of commissioners or in the circuit or superior court his petition alleging "that such public drain or any part thereof, being out of repair, is not sufficient to properly perform the drainage for which it was designed and intended, and that it can be made sufficient . . . by tiling and covering, or by increasing the size or number of the tile and changing its course, or extending the length thereof, or by removing the tile and converting the drain into an open ditch, or by making any other change therein which would be of public utility," conforming in general to the form of petition and rules of practice prescribed in the case of original petitions for drainage; and that the change, extension or repairs asked for, if ordered, should be made and paid for by assessments, in conformity with the provisions of the general law for constructing drains upon original petitions. But that in a proceeding to make a drain "perform the drainage for which it was designed and intended," by increasing the size or number of the tile and changing the course or extending the length of the drain, if "the court shall find that such drain as originally constructed and as existing is not sufficient to properly drain the lands intended," but that the proposed improvement probably will do so, "and will, if made, be of public utility," then the right of two-thirds in number of the resident owners of lands affected to defeat the proceeding and cause the petition to be dismissed by merely filing a remonstrance stating that they are opposed to the construction of the drain, is denied. §6196 Burns 1926, §6174 Burns 1914, Acts 1913 p. 152. Section 10 of the original act of 1907, in which §19

was found, provided, "that all ditches or drains that may have been, or may hereafter be constructed under and by virtue of any law of this state, shall, except as hereinafter provided, be under the charge and supervision of the trustee of the township . . ., whose duty it shall be to see that the same are cleaned out and kept open, free from obstruction, so as to answer their purpose." Succeeding sections, down to and including §16, provided the manner in which the township trustee, with the aid of the county surveyor, should cause ditches and drains to be cleaned and repaired, and how payment of the expense should be enforced, and contained provisions for an appeal to the circuit court. And §20 provided that "the repair of all drains or ditches, other than dredge ditches, shall be in the hands of the township trustee in whose township such ditches or any part thereof may be situated," with provisos authorizing the trustee to have the work done by the county surveyor under certain circumstances, and providing that any trustee neglecting to perform the duties imposed on him by the act should be punished by a fine. The act of 1915, relied on as repealing the amended §19, expressly repealed all of these sections by which the township trustee was given authority and charged with duties in the matter of cleaning and repairing ditches, referring to each of them by number, as was stated above. The first section provided that "the cleaning, repair, betterment, improvement and general superintendence of *all ditches contemplated in this act*, shall, except as hereinafter otherwise provided, be under the exclusive charge and supervision of the board of commissioners," which, "under the conditions prescribed by this act" was "authorized and required to perform the following duties: (1) To see that *all such ditches and drains* are cleaned out and kept open and in proper repair and free from obstruction, in conformity with the original specifications thereof, and in such

manner that they may fully and completely discharge the functions for which they were designed and intended; (2) to authorize the improvement or betterment of *any such ditch or drain* in excess of the original specifications," etc. Later sections contained provisions in as general terms for filing petitions for the cleaning, repair and maintenance, or the betterment and maintenance of *"any ditch or drain contemplated in this act,"* and as to the proceedings thereon. Two other drainage acts were passed at the same session of the legislature. One entitled "An act concerning the maintenance and repair of all ditches and drains, except dredge ditches, by the several township trustees," which provided that the cleaning, repair and general superintendence of all public ditches and drains, "except dredge ditches, shall be under the exclusive charge and supervision of the township trustee," etc., contained an emergency clause, and took effect immediately. Another, entitled "An act concerning the organization of drainage, sanitary and reclamation districts and prescribing their powers and duties," took effect seven weeks later, at the same time as Acts 1915 p. 417, *supra,* which appellee says operated to repeal the act of 1915 amending §19, *supra.* And §35 of Acts 1915 p. 417 (on p. 452), after expressly providing that certain ditches and drains should be repaired and maintained in conformity with the provisions of the act concerning the organization of drainage, sanitary and reclamation districts, continued as follows: "All other ditches or drains *may be repaired and maintained* in conformity with the provisions of this act, or . . . of 'an act concerning the maintenance and repair of all ditches and drains, except dredge ditches, by the several township trustees,' which two said acts shall be construed as supplemental to each other, and *as affording optional methods* for the repair and maintenance of such ditches and drains as are contemplated in both acts." And

§36 provided that the act should not repeal Acts 1905 p. 447, forbidding the drainage of fresh-water lakes, but should be supplemental thereto.

In other words, the act relied on as repealing the amended §19 contained provisions in very general terms for cleaning, repairing and keeping open "all ditches and drains contemplated by such act," but expressly provided that the method so provided should not be exclusive as to very large classes of ditches and drains to which it applied, but which might, nevertheless, be cleaned, repaired and maintained by the township trustees or by sanitary districts, and failed to contain any provisions to the effect that the method which it provided was meant to be exclusive. And while it expressly repealed two acts for the maintenance and repair of public dredge ditches, and also eight sections of the statute of which §19 formed a part, designating those sections by numbers, both higher and lower than §19, it did not express a purpose to repeal §19, that authorized a special proceeding by which to make a public drain "sufficient properly to perform the drainage for which it was designed and intended."

It is only when a statute or section thereof has been wholly repealed, so that none of its provisions remain in force, that the legislature is without power to enact valid legislation within the scope of its title by way of amending it; not by reason of a mere partial repeal of some parts of it. *Heffelfinger* v. *City of Ft. Wayne* (1925), 196 Ind. 689, 694, 149 N. E 555. Repeals by implication are not favored. *Jeffersonville, etc., R. Co.* v. *Dunlap* (1887), 112 Ind. 93, 96, 13 N. E. 403; *Huff* v. *Fetch* (1924), 194 Ind. 570, 579, 143 N. E. 705; *Greathouse* v. *Board, etc.* (1926), 198 Ind. 95, 151 N. E. 411, 415. And, in the absence of any declared purpose that one statute shall repeal another relating to the same subject-matter, they will be given

such a construction, if that be reasonably possible, that both may be given effect. *Kramer* v. *Beebe* (1917), 186 Ind. 349, 355, 115 N. E. 83. In the construction of statutes, specific provisions will prevail over general provisions with relation to the same subject-matter. And it is a rule of statutory construction that a general statute, without negative words, does not repeal the particular provisions of a former statute on a special subject to which the general language of the later act, if it stood alone, might be deemed to apply, unless the two statutes are irreconcilably inconsistent. *Walter* v. *State* (1886), 105 Ind. 589, 592, 5 N. E. 735; *Kingan & Co.* v. *Ossam* (1921), 190 Ind. 554, 557, 131 N. E. 81; *Monical* v. *Heise* (1911), 49 Ind. App. 302, 305, 94 N. E. 232. Applying these rules of construction, we reach the conclusion that the act of 1913 was not repealed by the act of 1915, and that §6196 Burns 1926, by which it was amended in 1919 (ch. 68, *supra*), is valid and in force. Therefore, the court erred in its first and second conclusions of law.

By its special finding, the court found that the Fachs ditch and its branches were established and constructed in 1901, in a proceeding before the board of commissioners under the statutes then in force, and had since remained unchanged. That the drain and its branches were constructed along natural watercourses in a natural watershed or basin including approximately 600 acres of land, the different parcels of which are owned by the parties to this action, and that all the surplus water which falls upon the 600 acres naturally and necessarily finds its outlet through the ditch and its branches. That the viewers who laid out the ditch and its two branches set out and described by parcels the sixteen tracts assessed, the total acreage of which was 980, the number of acres benefited being 389. That 598 acres were within the watershed and naturally flowed into and found their

outlet through said drains. Tabulations included the acreage of each tract, acres in watershed, and acres benefited, thus appellant Straus Brothers Company had a total of 160 acres, 109 acres of which were in the watershed and twenty-four acres of which were benefited, and appellant Henry had a total of eighty acres, all of which were in the watershed and benefited. That, immediately after the construction of the ditch, there were certain small areas of land assessed as benefited which overflowed in times of freshet, and crops planted therein were drowned out, and said overflows still occur from time to time. That, since the construction of the drain, lateral drains have been constructed by both petitioners and remonstrators, extended from said ditches out into areas not assessed as specially benefited, and that a large volume of water is now brought by them into the drain with greater speed in shorter periods after rainfall and that, by reason of said lateral drains, the main ditch and its branches have become more inadequate from year to year as the underground drainage was increased. That some drains have been constructed that reached outside of the territory assessed in the original drainage and that it would not be possible to reconstruct this ditch without specially benefiting areas that were not specially benefited by the original drainage and this proceeding cannot be made a proceeding to repair or increase the capacity to take care of the water originally intended to be drained thereby. Also that one lateral drain has been constructed on Straus Brothers Company's tract of land and which crosses the watershed. That it was constructed with the intention of draining portions of said tract of land lying west of the watershed as well as part lying within the watershed. The court further found that twelve landowners, who were residents of the county, out of fourteen such owners, had filed a remonstrance against the improvement petitioned

for and that they constituted more than two-thirds of all the landowners who would be affected, and owned more than fifty per cent. of the lands abutting on the drain and its branches.

Section 6196 Burns 1926, (§19 of the 1907 drainage law as amended in 1913 and again amended in 1919) providing for drainage petitions, contains the following proviso:

"And provided, further, That where the petition alleges that the drain, as originally constructed, is not sufficient to perform the drainage for which it was designed and intended, and the prayer thereto is to increase the size or number of the tile, or to increase the size or the number of the tile and change the course or extend the length of such drain, and the court shall find that such drain, as originally constructed, and as existing, is not sufficient to properly drain the lands intended, and that the proposed repair, change or extension thereof will probably accomplish such proper drainage, and will, if made, be of public utility, then, under such circumstances, the right granted under said section three of this act to remonstrate against and prevent the accomplishment of such repair, change or extension is hereby denied."

The effect of this proviso is that where the petition asks to increase the size or number of the tile in a public drain or to increase the number of the tile and change its course or extend its length because it is not sufficient as originally constructed and as existing, properly to drain the lands intended, and a remonstrance is filed signed by two-thirds in number of the landowners named in the petition who are likewise the owners of lands abutting on more than fifty per cent. of the total length of the ditch, such remonstrance stands to defeat the petition unless and until the petitioners take the burden of proof and establish the facts required to overcome the

remonstrance, which the court must find, viz.: (1) That such drain, as originally constructed, and as existing, is not sufficient to properly drain the lands intended; and (2) that the proposed repair, change or extension thereof will probably accomplish such proper drainage; and (3) will, if made, be of public utility.

The court found none of these facts, and therefore the third conclusion of law "that the remonstrance herein is sufficient and that the said cause should be dismissed" was correct.

The court's errors in stating its first and second conclusions of law have been rendered harmless by the third conclusion of law, which attains the same result, but without error.

It is unnecessary to determine whether the court erred in overruling appellants' motion for a change of venue from the newly-elected judge who passed on the motion for a new trial. Such action, if error, would not necessitate a reversal of the judgment, since this court, in addition to determining the questions set out above, has examined the evidence and found that it supports the special findings of fact. A correct result having been reached by the lower court, the judgment is affirmed.