281 F.2d 24
 108 U.S.App.D.C. 191
 Summer G. WHITTIER, Administrator of Veterans Affairs, et
al., Appellants,
v.
Herman L. R. EMMET, Jr., On Behalf of Himself and all Others
Similarly Situated, Appellee.
UNITED STATES of America, Appellant,
v.
James A. DEERING, On Behalf of Himself and all Others
Similarly Situated, Appellee.
UNITED STATES of America, Appellant,
v.
Robert H. MABBUTT et al., Suing for Themselves and all
Persons Similarly Situated, Appellees.
 Nos. 15066-15068.
 United States Court of Appeals District of Columbia Circuit.
 Argued Nov. 19, 1959.
Decided June 23, 1960, Petition for Rehearing en Banc Denied
Sept. 16, 1960.
 
 Mr. Lionel Kestenbaum, Atty., Dept. of Justice, with whom Asst. Atty. Gen., George C. Doub, Messrs. Oliver Gasch, U.S. Atty., And Morton Hollander, Atty., Dept. of Justice, were on the brief, for appellants.
 Mr. John Geyer Tausig, Washington, D.C., with whom Messrs. Henry F. Butler and John T. Koehler, Washington, D.C., were on the brief, for appellees.
 Before Mr. Justice BURTON, retired,* and WASHINGTON and DANAHER, Circuit Judges.
 Mr. Justice BURTON.
 
 
 1
 Under Article IV of the Soldiers' and Sailors' Civil Relief Act of 1940, the United States guaranteed the payment of premiums on limited amounts of commercial life insurance policies carried by servicemen.[1] In 1942 the Act was amended to include, for the first time, an express provision that when such an insurance premium payment was made by the United States, it evidenced a debt due to the United States from the insured serviceman on whose account the payment was made. The amendments also provided that such debts to the United States were collectible either by their deduction from amounts due the insured servicemen from the United States or as otherwise authorized by law.[2]
 
 
 2
 The Administrator of Veterans' Affairs interpreted Article IV of the 1940 Act, prior to the 1942 Amendments, as establishing by implication a comparable obligation on the part of the insured servicemen to reimburse the Government for its payment of the guaranteed premiums. Under this interpretation, the Administrator collected over $1,640,000 from approximately 8,400 insured servicemen. He did this in large part by offsetting against the debts of the respective servicemen the dividends due them in connection with their National Service Life Insurance policies.[3]
 
 
 3
 Although there was some acquiescence in the Administrator's interpretation of the 1940 Act, there also was vigorous opposition to it. This resulted in conflicting judicial decisions[4] culminating in 1957 in the Supreme Court's decision, with three Justices dissenting, in United States v. Plesha, 352 U.S. 202, 77 S.Ct. 275, 1 L.Ed.2d 254. In that case the Supreme Court held that, contrary to the Administrator's interpretation of the 1940 Act, prior to the 1942 Amendments, the insured servicemen were not obligated to reimburse the Government for its payment of premiums on their account.
 
 
 4
 After the Plesha decision, the next problem was that of returning to the servicemen their funds which had been used erroneously by the Government to reimburse itself for its payment of the guaranteed premiums.
 
 
 5
 To facilitate such refunding, Congress, in 1958, enacted Public Law 85-586.[5] That Act authorized the Administrator of Veterans' Affairs, upon timely application, to refund to the servicemen, without interest, all amounts collected from them by the United States under its erroneous interpretation of the 1940 Act. Public Law 85-586 made available the money to make such refunds and also provided that the right to such refunds was not to be denied by reason of statutory time limitations, judgments theretofore rendered, or 'any other technical defense.'
 
 
 6
 In the three cases now before us plaintiffs ask not only for the principal of the sums claimed, but also for interest on delayed dividends due them under their National Service Life Insurance policies. Furthermore, they ask for the allowance of attorneys' fees to cover services rendered not only to the named parties to the litigation, but to all persons similarly situated.
 
 
 7
 In No. 15066, the plaintiff, Emmet, sought a writ of mandamus from the District Court for the District of Columbia ordering the defendant officials to make the payments requested.
 
 
 8
 In Nos. 15067 and 15068 the plaintiffs, Deering and Mabbutt, brought suit, respectively, in the District Court for the Southern District of New York and the District Court for the Northern District of California for the payment of their claims pursuant to the Tucker Act,[6] and the National Service Life Insurance Act.[7] Those courts transferred the cases to the District Court for the District of Columbia in reliance upon 28 U.S.C. 1404(a).[8]
 
 
 9
 That court consolidated the cases and granted a preliminary injunction, which is still in effect, forbidding the disbursement of more than 90% Of the respective payments authorized by Public Law 85-586. It overruled all objections to its jurisdiction and to the properiety of taking action on the merits of the issues presented. After a plenary hearing it ordered payment by the Government not only of the amounts provided for in Public Law 85-586, but also of interest at 3% Per annum on an amount equal to the value of the National Service Life Insurance dividends;[9] It also authorized the payment of attorneys' fees of 5% On the aggregate amount of principal and interest to be refunded under Public Law 85-586.
 
 
 10
 The Government, on appeal, seeks a reversal of the judgment below on the ground that none of these actions should have been heard by the District Court for the District of Columbia. On the merits, the Government contends that neither the allowance for interest nor that for attorneys' fees was justified. For the reasons hereafter stated, we agree with the Government.
 
 
 11
 In No. 15066, originating in 1955 in the District Court for the District of Columbia, Emmet sought to litigate the question later resolved by the Supreme Court in United States v. Plesha, supra. He asked for a writ of mandamus directed against the Administrator of Veterans' Affairs, the Secretary of the Treasury, the Treasurer of the United States and the Comptroller General. It is elemental, however, that this extraordinary remedy was not available for such purpose, inasmuch as the Tucker Act provided an adequate remedy at law to test the question.[10] The pecuniary liability of the United States may be determined only through such procedures as the United States has authorized. Moreover, a writ of mandamus will be issued only to compel the performance of a ministerial duty as distinguished from one calling for exercise of discretion.[11] In this case the amounts claimed has not yet been determined at the time the action was filed. While this case was pending, the decision in the Plesha case and the enactment of Public Law 85-586 settled the major legal issues. They did not, however, authorize an allowance for interest and another for attorneys' fees as sought by the plaintiff. The way to reach those issues is not by writ of mandamus. Accordingly, the complaint in the Emmet case must be dismissed on jurisdictional grounds insofar as it applies to mandamus.
 
 
 12
 Deering and Mabbutt sought relief comparable to that sought in the Emmet case but by a different procedure. They filed their complaints in the District Courts of their respective districts of residence. Each alleged that jurisdiction existed in those courts both under the Tucker Act and the National Service Life Insurance Act. On motions of plaintiffs those courts transferred both cases to the District Court for the District of Columbia under authority of 28 U.S.C. 1404(a). The Government here contends that the complaints should have been dismissed or the cases re-transferred to permissible districts.
 
 
 13
 Section 1404(a) limits transfers of such cases to those districts where the action might have been brought in the first instance.[12] Such limitation excludes venue in this district under the Tucker Act, because by 1402(a) venue under the Tucker Act is limited to the courts of the districts of the plaintiffs' residence or to the Court of Claims.
 
 
 14
 But plaintiffs also contend that venue lies in the District Court for the District of Columbia under the National Service Life Insurance Act of 1940.[13] Under the jurisdictional provision of that Act, actions involving disagreements as to claims under National Service Life Insurance contracts may be brought either in the district of the plaintiff's residence or in the District Court for the District of Columbia.
 
 
 15
 That provision, however, does not apply to the instant cases because the complaints here seek to recover the collections erroneously made by the Government in reliance upon the Soldiers' and Sailors' Civil Relief Act of 1940, not the National Service Life Insurance Act. The cases before us do not involve any disagreement about dividends under the Insurance Act. The Government admits the plaintiffs' right to those dividends. It disbursed them from the Insurance Fund and credited plaintiffs' accounts by offsetting the erroneous claims of the Government under the Soldiers' and Sailors' Civil Relief Act.
 
 
 16
 Even if these differences be treated as disagreements as to dividends, it still would be necessary to show here that this disagreement was one for an 'insurance benefit' within the meaning of 38 U.S.C. 784(h).[14] Candell v. United States, 10 Cir., 1951, 189 F.2d 442, indicates that disputes over dividends do not so qualify. As was pointed out in Candell, insurance dividends are realized as a result of low mortality experience and economies in the operation of the insurance company. They are unrelated to the obligation to pay the particular policyholder for a loss insured against and are not the same sort of payment as an insurance benefit.
 
 
 17
 Furthermore, the 'disagreement' which is a prerequisite to a suit under the Insurance Act must include the filing of a claim or protest and a denial. That is absent here. United States v. Christensen, 10 Cir., 1953, 207 F.2d 757.
 
 
 18
 After the court below had declined do dismiss these cases or to transfer them to other District Courts, it considered them on their merits, and granted substantially the relief requested. On these appeals, the parties have argued the merits. Although we have concluded that the lower courts were in error in deciding that venue in Deering and Mabbutt lies in the District of Columbia, this does not preclude us from disposing of these cases on the merits. Section 1406(b) of the Judicial Code provides that deficiencies in venue shall not impair a District Court's jurisdiction if objection to the deficiency is not timely and sufficient.[15] Venue is primarily designed to protect defendants from inconvenient forums and courts from inconvenient lawsuits. Once the case has been heard fully and fairly on the merits, the reasons for reversing the judgment on grounds of improper venue are substantially diminished in the absence of prejudice to a party who has preserved his standing to complain by timely objection. /16/ This factor distinguishes the cases before us from those where the decision of the District Court on the venue question was brought before the Court of Appeals by petition for mandamus or interlocutory appeal before a hearing on the merits.[17]
 
 
 19
 We proceed to a disposition of the instant cases on their merits because the erroneous determination of the venue questions below does not constitute reversible error as to any of the parties. These cases were transferred to this district on motions of the plaintiffs and their view of the venue questions prevailed below. Having invoked the transfer provisions of 1404(a) themselves, and having failed to take a cross-appeal from the judgment below in their favor on the merits, they have waived their right to complain of the improper venue. Peoria & P.U.R. Co. v. United States, 1924, 263 U.S. 528, 44 S.Ct. 194, 68 L.Ed. 427.
 
 
 20
 As for the Government, if it prevails on the merits, the erroneous determination of the venue amounts to harmless error. It would not make any significant difference from the Government's point of view whether the cases were tried in New York and California, or in the District of Columbia. In fact, the Government has had the advantage of having to try only one proceeding and take appeals in one circuit rather than to have had three trials and take appeals in three circuits. In this situation there is no basis for concluding that prejudice to the Government resulted from trial in an improper district. It would be an obviously questionable result if we should find for the Government on the merits, and yet order it to relitigate the cases in other forums merely because improper venue had been imposed upon it over its timely objections.
 
 
 21
 On the merits, the court below ordered the defendants to pay plaintiffs, intervenors, and each veteran similarly situated, the amount the Administrator of Veterans' Affairs had wrongfully applied to the reimbursement of the United States for premiums advanced by it on the serviceman's commercial life insurance under the Civil Relief Act of 1940. The court below also ordered the payment of interest at 3% Per annum on the amount so to be paid.
 
 
 22
 An obvious reason for denying this allowance of interest is that Congress has made no provision for its payment. It is elemental that pre-judgment interest cannot be assessed against the Government in the absence of a specific provision authorizing such assessment.[18] Furthermore, since all but the few named parties to these actions will receive payment of their claims solely under Public Law 85-586, rather than under the judgments rendered in these cases, the terms of such payments are to be determined by such statute. It expressly states that the payments authorized are 'without interest.'
 
 
 23
 There is no authority in the National Service Life Insurance Act for the allowance of interest claimed by the named plaintiffs in these actions. In fact, the Supreme Court has held that no interest was allowable under the World War I Insurance Act, which is substantially identical to the National Service Life Insurance Act, even in the extreme case of a wrongfully withheld death benefit.[19]
 
 
 24
 The court below also ordered the allowance of attorneys' fees of 5% Of the aggregate principal and interest which the court ordered paid under Public Law 85-586. These fees were to be applied first to reimbursement for legal expenses in certain named cases and the balance was to be divided among counsel named in the order. This allowance was not dependent upon statutory authority but rested upon the equity powers of a court to allow attorneys' fees in exceptional cases and for dominating reasons of justice. Sprague v. Ticonic Nat. Bank, 1939, 307 U.S. 161, 59 S.Ct. 777, 83 L.Ed. 1184. The nature and extent of the legal services performed control the allowance rather than any formal relationship between client and attorney. The decision in the Plesha case authoritatively established the rights of the claimants and in that sense was a necessary precondition to the payment of any refunds to the veteran claimants. This decision, however, was merely an application of law which was available to other litigants under the doctrine of stare decisis. One who is influential in litigation leading to the announcement of a rule of law does not thereby gain a right to compensation from all those who later benefit from the application of the rule. Nor did the Plesha decision create such a distinct fund for the benefit of the class of claimants either by way of stare decisis or otherwise. It merely decided the claims of a few veterans out of about 8,400 who had claims involving a common question of law. Many of those claims would have been defeated by technical defenses, statutes of limitation, voluntary payments, or res judicata, except for the waiver of such defenses by Congress as set forth in Public Law 85-586. In that Act, Congress made available the Civil Relief Fund and other funds for reimbursement of the veterans entitled to it.
 
 
 25
 From the small number of claimants who have joined these actions during the four years since the litigation was commenced, it is probable that few will join before judgment. Of the nine present intervenors, only two were not parties to one of the class suits or to Plesha. Few more, if any, are likely to join now in view of Public Law 85-586. The saving of so few, out of about 8,400 claimants, from the operation of the statute of limitations is not an adequate reason for imposing attorneys' fees upon all 8,400 litigants.
 
 
 26
 Appellees' ultimate position is that they are entitled to attorneys' fees because Congress was moved by this litigation to pass an Act assisting these claimants. The class Congress favored is broader than that covered by the Plesha decision. The assertion of a noncontractual claim for compensation for services rendered in sponsoring favorable legislation does not deserve prolonged discussion.
 
 
 27
 The judgments of the District Court are reversed and the cases are remanded to it with directions that the complaint in No. 15066 be dismissed and that the complaints in Nos. 15067 and 15068 be dismissed unless the appellees move for a transfer to courts having jurisdiction over the actions for further proceedings not inconsistent with this opinion.
 
 
 28
 Reversed and remanded.
 
 
 
 *
 Siting by designation pursuant to 28 U.S.C. 294(a)
 
 
 [1]
 54 Stat. 1183-1186, 50 U.S.C.A.Appendix, 540-554
 
 
 [2]
 56 Stat. 775, 50 U.S.C.A.Appendix, 546
 
 
 [3]
 
 Collected by offset against
 National Service Life Insurance
 dividends ......................... $ 960,000
 Insurance dividends .................. 65,000
 By offset against disability
 compensation ....................... 22,000
 Cash payments in response
 to demands by letters ............. 600,000
 As a result of final
 judgments ........................... 2,000
 ----------
 $1,649,000
 
 
 [4]
 Veteran required to reimburse the United States for its payment of guaranteed premiums. United States v. Hendler, 10 Cir., 1955, 225 F.2d 106; Morton v. United States, D.C.N.D.N.Y. 1953, 113 F.Supp. 496; United States v. Nichols, D.C.N.D.Iowa 1952, 105 F.Supp. 543. Veteran not required to reimburse the United States for such payments. Plesha v. United States, 9 Cir., 1955, 227 F.2d 624 reversing D.C.N.D.Cal.1953, 123 F.Supp. 593; Hormel v. United States, D.C.S.D.N.Y.1954, 123 F.Supp. 806
 
 
 [5]
 'Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, That the Administrator of Veterans' Affairs is hereby authorized to make refunds, without interest, which are due on account of amounts collected by the United States Government by offset or otherwise from persons who made valid application for and were legally entitled to the protection of article IV of the Soldiers' and Sailros' Civil Relief Act of 1940, as it existed prior to the amendments of October 6, 1942. No refund shall be made pursuant to this Act unless application therefor is made to the Veterans' Administration, within two years after the date of enactment of this Act and refund hereunder shall not be denied by reason of any other statutory time limitations, judgments heretofore rendered, or any other technical defense
 'Sec. 2. The Soldiers' and Sailors' Civil Relief Fund may be used by the Veterans' Administration for making refunds pursuant to this Act and there is hereby authorized to be appropriated such additional sums as may be necessary to carry out the purposes of this Act.' Public Law 85-586, 72 Stat. 487-488, 50 U.S.C.A.Appendix, 540 note.
 
 
 [6]
 See 28 U.S.C. 1346(a)(2) and 1402(a)
 
 
 [7]
 38 U.S.C. 784
 
 
 [8]
 '(a) For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.'
 
 
 [9]
 The interest was to be computed from the date that the dividends were withdrawn from the National Service Life Insurance Fund to the date on which they were paid to the servicemen entitled to them
 
 
 [10]
 United States ex rel. Girard Trust Co. v. Helvering, 1937, 301 U.S. 540, 543, 57 S.Ct. 855, 81 L.Ed. 1272; 28 U.S.C. 1346, 1491 et seq.; see Plesha v. United States, 9 Cir., 1955, 227 F.2d 624
 
 
 [11]
 See Reeside v. Walker, 1851, 11 How. 272, 13 L.Ed. 693. The Code vests extensive unreviewable discretion in the Administrator to determine matters of law and fact in this area. See 38 U.S.C. 785, 211
 
 
 [12]
 See note 8, supra
 
 
 [13]
 784. Suits on insurance
 '(a) In the event of disagreement as to claim, including claim for refund of premiums, under contract of National Service Life Insurance, United States Government life insurance, or yearly renewable term insurance between the Veterans' Administration and any person or persons claiming thereunder an action on the claim may be brought against the United States either in the United States District Court for the District of Columbia or in the district court of the United States in and for the district in which such person or any one of them resides, and jurisdiction is conferred upon such courts to hear and determine all such controversies. * * * The courts of appeals for the several circuits, including the District of Columbia, shall respectively exercise appellate jurisdiction and, except as provided in section 1254 of title 28, the decrees of such courts of appeals shall be final.
 '(h) The term 'claim' as used in this section means any writing which uses words showing an intention to claim insurance benefits; and the term 'disagreement' means a denial of the claim, after consideration on its merits, by the Administrator or any employee or organizational unit of the Veterans' Administration heretofore or hereafter designated therefor by the Administrator.' 38 U.S.C. 784.
 Before Title 38 was enacted into positive law in 1958, the provisions of this section were contained in 38 U.S.C. (1952 ed.) 445, 817.
 
 
 [14]
 See note 13, supra
 
 
 [15]
 '(b) Nothing in this chapter shall impair the jurisdiction of a district court of any matter involving a party who does not interpose timely and sufficient objection to the venue.' 28 U.S.C. 1406(b)
 Olberding v. Illinois Central R. Co., 1953, 346 U.S. 338, 340, 74 S.Ct. 83, 98 L.Ed. 39; Bankers Life & Cas. Co. v. Holland, 1953, 346 U.S. 379, 382, 74 S.Ct. 145, 98 L.Ed. 106; Polizzi v. Cowles Magazines, Inc., 1953, 345 U.S. 663, 665, 672, 73 S.Ct. 900, 97 L.Ed. 1331; Neirbo Co. v. Bethlehem Shipbuilding Corp., 1939, 308 U.S. 165, 167-168, 60 S.Ct. 153, 84 L.Ed. 167; Commercial Casualty Insurance Co. v. Consolidated Stone Co., 1929, 278 U.S. 177, 179, 49 S.Ct. 98, 73 L.Ed. 252.
 
 
 [16]
 See 28 U.S.C. 2111; Fed.Rules Civ.Proc., 61, 28 U.S.C
 Cf. Bankers Life & Cas. Co. v. Holland, supra, 346 U.S. at page 382, 74 S.Ct. at page 147; Paramount Pictures, Inc. v. Rodney, 3 Cir., 1950, 186 F.2d 111; Atlantic Coast Line R. Co. v. Davis, 5 Cir., 1950, 185 F.2d 766, 768; Ford Motor Co. v. Ryan, 2 Cir., 1950, 182 F.2d 329, 330; Magnetic Engineering & Mfg. Co. v. Dings Mfg. Co., 2 Cir., 1950, 178 F.2d 866, 869.
 Before the adoption of the Federal Rules of Civil Procedure, a defendant was required to raise his venue point by special appearance and motion to quash before he pleaded to the merits or he would be deemed to have waived his defense. See e.g., Commercial Casualty Insurance Co. v. Consolidated Stone Co., supra. Venue questions, therefore, did not arise in the federal courts on appeal after an adjudication on the merits. Rule 12(b) of the Federal Rules of Civil Procedure abolished the special appearance and permitted an attack on the venue of the court to be pleaded by motion or in the answer along with the other defenses going to the merits. While we have not found any reported federal decisions since the adoption of the federal rules considering a venue contention on appeal after trial on the merits and coming to the conclusion that the error was harmless, a number of state courts have reached this decision in analoguous circumstances. See e.g., Straus Bros. Co. v. Fisher, 1928, 200 Ind. 307, 163 N.E. 225; City of Georgetown v. Cantrill, 1914, 158 Ky. 378, 164 S.W. 929; Hayes v. Oertel, La.App.1940, 1940, 195 So. 388; Sanders v. Atlantic Coast Line R. Co., 1920, 114 S.C. 164, 103 S.E. 564; Oldham v. Reiley, 1921, 44 S.Dak. 428, 184 N.W. 250; Woodson Independent School Dist. v. State ex rel. Cox, Tex.Civ.App.1939, 130 S.W.2d 1038; Ramirez v. Sanchez, Tex.Civ.App.1936, 97 S.W.2d 1034; Peters v. Allen, Tex.Civ.App.1927, 296 S.W. 929; Floor v. Mitchell, 1935, 86 Utah 203, 41 P.2d 281; Kalb v. Luce, 1941, 239 Wis. 256, 1 N.W.2d 176.
 
 
 [17]
 See e.g., Continental Grain Co. v. Federal Barge Lines, Inc., 5 Cir., 1956, 268 F.2d 240, certiorari granted 361 U.S. 811, 80 S.Ct. 79, 4 L.Ed.2d 59; Behimer v. Sullivan, 7 Cir., 1958, 261 F.2d 467, certiorari granted 361 U.S. 809, 80 S.Ct. 50, 4 L.Ed.2d 58; Blaski v. Hoffman, 7 Cir., 1958, 260 F.2d 317, certiorari granted 359 U.S. 904, 79 S.Ct. 583, 3 L.Ed.2d 570; In re Josephson, 1 Cir., 1954, 218 F.2d 174; All States Freight, Inc. v. Modarelli, 3 Cir., 1952, 196 F.2d 1010; C-O-Two Fire Equipment Co. v. Barnes, 7 Cir., 1952, 194 F.2d 410, affirmed by an equally divided court 344 U.S. 861, 73 S.Ct. 102, 97 L.Ed. 695; Gulf Research & Development Co. v. Leahy, 3 Cir., 1951, 193 F.2d 302, affirmed by an equally divided court 344 U.S. 861, 73 S.Ct. 102, 97 L.Ed. 668; Paramount Pictures, Inc. v. Rodney, supra; Atlantic Coast Line R. Co. v. Davis, supra; Ford Motor Co. v. Ryan, supra; Magnetic Engineering & Mfg. Co. v. Dings Mfg. Co., supra
 
 
 [18]
 28 U.S.C. 2411, 2516. See United States v. New York Rayon Importing Co., 1947, 329 U.S. 654, 67 S.Ct. 601, 91 L.Ed. 577; United States v. Thayer-West Point Hotel Co., 1947, 329 U.S. 585, 67 S.Ct. 398, 91 L.Ed. 521
 
 
 [19]
 United States v. Citizens Loan & Trust Co., 1942, 316 U.S. 209, 62 S.Ct. 1026, 86 L.Ed. 1387; United States v. Worley, 1930, 281 U.S. 339, 50 S.Ct. 291, 74 L.Ed. 887