573 F.2d 245
 24 Cont.Cas.Fed. (CCH) 82,388
 UNITED STATES of America for the Use and Benefit of HARVEY
GULF INTERNATIONAL MARINE, INC.,
Plaintiff-Appellee Cross-Appellant,
v.
MARYLAND CASUALTY COMPANY, Defendant-Appellant Cross-Appellee.
 No. 76-2467.
 United States Court of Appeals,
Fifth Circuit.
 May 19, 1978.
 
 H. Bruce Shreves, New Orleans, La., for defendant-appellant cross-appellee.
 M. Arnaud Pilie, New Orleans, La., for plaintiff-appellee cross-appellant.
 Appeals from the United States District Court for the Eastern District of Louisiana.
 Before COLEMAN, HILL, and RUBIN, Circuit Judges.
 JAMES C. HILL, Circuit Judge:
 
 
 1
 This case involves three distinct issues under the Miller Act, 40 U.S.C.A. § 270b. We affirm in part, reverse in part, and remand the case to the District Court.
 
 
 2
 On November 10, 1977, the plaintiff subcontractor, Harvey Gulf International Marine, Inc. (Harvey Gulf), brought suit under the Miller Act against its prime contractor's surety, Maryland Casualty Company (Maryland Casualty), for amounts allegedly due for towing and other services performed in connection with three dredging contracts let by the U.S. Army Corps to the prime contractor. The United States District Court for the Eastern District of Louisiana subsequently dismissed Harvey Gulf's claim on one of these contracts, and granted summary judgment with respect to the other two contracts. Maryland Casualty appeals from the grant of summary judgment, and Harvey Gulf cross-appeals from the dismissal of one of its claims. Because each appeal raises a separate issue, it will be simpler to discuss the contracts in turn rather than outlining the disputes first.
 
 I.
 
 3
 Of the three contracts let to Harvey Gulf's prime contractor, two were to be performed in the Eastern District of Louisiana the Home Place levee contract and the Grand Prairie levee contract. The third contract, the West Atchafalaya levee contract, was to be performed in the Western District of Louisiana.
 
 
 4
 Maryland Casualty appeals the grant of summary judgment with respect to the Home Place levee contract urging that the last labor was performed by Harvey Gulf on that contract over a year prior to the filing of suit. If so, the Miller Act one-year statute of limitations, 40 U.S.C.A. § 270b(b), would have run with respect to that contract.
 
 
 5
 The court has reviewed the record, and it appears from the uncontradicted documentary evidence introduced by both parties below that Harvey Gulf's tug Thomas Allen was performing services in connection with the Home Place levee contract through November 23, 1974, less than one year prior to the filing of suit. Consequently, the district court's grant of summary judgment on the Home Place contract is affirmed.II.
 
 
 6
 As to the second contract to be performed in the Eastern District, the Grand Prairie levee contract, it is conceded that the last labor performed by Harvey Gulf in connection with that contract occurred on October 24, 1974, more than one year prior to the filing of this suit. The district court dismissed Harvey Gulf's claim for failure to file within the limitations period, 40 U.S.C.A. § 270b(b). Harvey Gulf urges, however, that it did file suit within one year in Louisiana state court. Although jurisdiction over Miller Act claims is exclusively federal, Harvey Gulf contends that its timely filing of suit, even in a court that lacked jurisdiction, interrupted the running of the limitations period.
 
 
 7
 The district court properly rejected Harvey Gulf's position. The rights created by the Miller Act are federal in nature and scope, F. D. Rich Co., Inc. v. United States for the Use of Industrial Lumber Co., Inc., 417 U.S. 116, 94 S.Ct. 2157, 40 L.Ed.2d 703 (1974), and federal law controls the computation of the limitations period.
 
 
 8
 Those circuits that have considered the question have uniformly regarded the one-year filing requirement as a jurisdictional limitation on the substantive rights conferred by the Miller Act. United States for the Use of Celanese Coatings Co. v. Gullard, 504 F.2d 466 (9th Cir. 1974); United States for the Use and Benefit of General Dynamics Corp. v. Home Indemnity Co., 489 F.2d 1004 (7th Cir. 1973); United States for the Use and Benefit of Statham Instruments, Inc. v. Western Casualty & Surety Co., 359 F.2d 521 (6th Cir. 1966); United States for the Use of Soda v. Montgomery, 253 F.2d 509 (3d Cir. 1958). In principle, this is consonant with the thesis that, because the right is federal in nature, the filing of suit in a non-federal jurisdiction does not toll the statute.
 
 
 9
 It is regrettable that the parties proceeded through trial and verdict in the state court to no purpose. Had the issue been raised early in the state court proceedings, suit might yet have been filed timely in federal court. However, no contention that the surety should be estopped is made, and we need not consider, therefore, whether an estoppel might toll the statute. Because the district court below lacked jurisdiction over the Grand Prairie levee contract claim when it was filed, its dismissal of that claim is affirmed.
 
 III.
 
 10
 We now address the third contract on which Harvey Gulf sued, the West Atchafalaya levee contract. Unlike the other two contracts, the West Atchafalaya contract was to be performed in the Western District of Louisiana, not the Eastern District where suit was filed.
 
 
 11
 Congress has expressly enacted a statute governing venue for Miller Act suits. In pertinent part the statute provides:
 
 
 12
 Every suit instituted under this section shall be brought . . . in the United States District Court for any district in which the contract was to be performed and executed and not elsewhere.
 
 
 13
 40 U.S.C. § 270b (emphasis supplied).
 
 
 14
 In the District Court, Maryland Casualty timely moved to dismiss the claim for improper venue. The District Court, without stating its reasons, denied Maryland Casualty's motion to dismiss and granted summary judgment in favor of Harvey Gulf on its West Atchafalaya claim.
 
 
 15
 There is no question that venue was improper, that the defendant did not waive its objection, and that there is no ambiguity in the language of the venue statute. We hold that the District Court erred in not dismissing the claim or in the alternative, transferring it to the proper forum pursuant to 28 U.S.C. § 1406(a).
 
 
 16
 It has been suggested that it would be pointless to reverse and remand the claim since only additional expense, delay, and inconvenience would result in the event of retrial and since the defendant has failed to demonstrate prejudice by being forced to defend the merits of the case in the Eastern District. We disagree. To embark upon the search for "harmless error" would be to disregard the unambiguous Congressional mandate that Miller Act suits be brought in the district in which the contract was to be performed "and not elsewhere."
 
 
 17
 The venue provision of the Miller Act is a restrictive one, enacted for the benefit of defendants, not plaintiffs. Texas Construction Company v. United States, 236 F.2d 138, 143 (5th Cir. 1956). Therefore the statute must be strictly construed, even more so than in the case of a general statute.
 
 
 18
 The proper approach is seen in Supreme Court authority as well as in the cases of our sister circuits. Michigan Nat. Bank v. Robertson, 372 U.S. 591, 83 S.Ct. 914, 9 L.Ed.2d 961 (1963); Olberding v. Illinois Central R. Co., 346 U.S. 338, 74 S.Ct. 83, 98 L.Ed. 39 (1953); Bechtel v. Liberty National Bank, 534 F.2d 1335 (9th Cir. 1976); Lied Motor Car Co. v. Maxey, 208 F.2d 672 (8th Cir. 1953). All of these cases have one central theme. In each, appellate courts have not hesitated to reverse for improper venue after the merits of the case have been decided.
 
 
 19
 Olberding was a diversity action brought under 28 U.S.C. § 1391(a) which, at that time, required suit to be filed "only in the judicial district where all plaintiffs or all defendants reside." The plaintiff brought suit where the claim arose (for which the amendment to § 1391(a) now makes provision) but not where all plaintiffs or all defendants resided. The defendant moved to dismiss on the ground of improper venue. The motion was overruled, the case went to trial, and the plaintiff won a verdict over the defendant. The defendant appealed. The Supreme Court, through Mr. Justice Frankfurter, reversed on the venue ground.
 
 
 20
 Congress in conferring jurisdiction on the district courts in cases based solely on diversity of citizenship, has been explicit to confine such suits to "the judicial district where all plaintiffs or all defendants reside." 28 U.S.C. § 1391(a). This is not a qualification upon the power of the court to adjudicate, but a limitation designed for the convenience of litigants, and, as such, may be waived by them. The plaintiff, by bringing the suit in a district other than that authorized by the statute, relinquished his right to object to the venue. But unless the defendant has also consented to be sued in that district, he has a right to invoke the protection which Congress has afforded him. The requirement of venue is specific and unambiguous; it is not one of those vague principles which, in the interest of some overriding policy, is to be given a "liberal" construction.
 
 
 21
 346 U.S. at 340, 74 S.Ct. at 85 (emphasis supplied).
 
 
 22
 Olberding was a case involving the general venue provision. In the case of a restrictive venue provision, enacted for the benefit of defendants, courts have even less liberty to deny the substantial rights granted to defendants by Congress.
 
 
 23
 The Supreme Court recognized this principle in Michigan Nat. Bank v. Robertson, supra. In Robertson, plaintiffs-respondents had purchased house trailers in Nebraska, executed and delivered notes and lien instruments to the local dealer who negotiated them to the defendant-petitioner, Michigan National Bank. The plaintiffs later initiated suit in Nebraska alleging violations of the Nebraska Installment Loan Act.
 
 
 24
 The Bank, relying upon the restrictive venue provision, 12 U.S.C. § 94 requiring that suits against national banks be maintained only where such entity is "located and established," moved to dismiss for improper venue. The motion was denied and plaintiffs obtained judgments for all of the relief requested. Following their recent decision in Mercantile Nat. Bank v. Langdeau, 371 U.S. 555, 83 S.Ct. 520, 9 L.Ed.2d 523 (1963), the Court repeatedly stressed the Congressional mandate behind 12 U.S.C. § 94 and refused to engage in liberal construction and enlarge upon the statutory venue, stating, in reversing the judgments, that such a matter is one for Congress to consider.
 
 
 25
 In Coulter Electronics, Inc. v. A. B. Lars Ljungberg & Co., 376 F.2d 743, 745 (1967), the Seventh Circuit in addressing the restrictive venue provision governing patent infringement suits, 28 U.S.C. § 1400(b), affirmed the dismissal of a complaint for improper venue even though the alien defendant could not be sued elsewhere in the United States. In rejecting the plaintiff's plea for "liberal construction," the Court stated: "In spite of plaintiff's protests, we think it is asking us for 'judicial legislation.' " Similarly, in Schnell v. Peter Eckrich & Sons, 365 U.S. 260, 262-263, 81 S.Ct. 557, 560, 5 L.Ed.2d 546 (1961), the Supreme Court refused to hold that a manufacturer by assuming the defense of its customer waived venue. "For us to enlarge upon the mandate of the Congress as to venue in such patent actions would be an intrusion into the legislative field."
 
 
 26
 Thus, we reverse and remand this portion of the case to the District Court for it to determine whether or not, in the interest of justice, the claim can or should be transferred to the proper district or be dismissed. 28 U.S.C.A. § 1406(a).
 
 
 27
 AFFIRMED in part, REVERSED in part, and REMANDED.
 
 
 28
 ALVIN B. RUBIN, Circuit Judge, concurring in part, dissenting in part:
 
 
 29
 With all deference to my brethren, who have accurately stated both the facts and the applicable rules of venue, I must dissent with respect to the conclusion they have reached in Part III of the majority opinion, resulting in a remand of the suit arising out of the West Atchafalaya levee contract. Because Maryland Casualty has been unable to identify any prejudice whatsoever that it suffered in consequence of the suit being heard in the wrong courtroom, I see no reason to require the case to be retried and I do not think the statute ordains this result under the circumstances of this case.
 
 
 30
 The suit was not tried to a jury but to the court. The facts were initially undisputed. The principles of law applicable, save as to venue and statute of limitations, were settled. I think it pointless now to remand this case for dismissal or transfer, and to require a duplication of efforts already expended. Only inconvenience, additional expense, and long delay can result from the majority's remand on the sole ground of improper venue.
 
 
 31
 The age when we obeyed the law, merely because it was the King's Will and without looking to its purpose, ended over 200 years ago. While judges must respect the command of the Constitution and the legislative prerogative of the Congress, we uphold, and enforce, the law of the land to insure that its purpose is fulfilled, and not out of blind adherence to the fiat of the sovereign. We do not sit to correct errors as if we were grading academic tests.
 
 
 32
 Harmless error is today universally disregarded. The rule that the court shall give no regard to errors or defects "which do not affect the substantial rights of the parties" is embodied in the Judicial Code, 28 U.S.C. § 2111,[1] and in the Federal Rules of Civil Procedure, Rule 61,[2] as well as in the Federal Rules of Evidence, Rule 103.[3] The Supreme Court has consistently applied the rule even in criminal cases where a constitutional right of the defendant has been abridged if the error is harmless beyond a reasonable doubt. Chambers v. Maroney, 1970, 399 U.S. 42, 90 S.Ct. 1975, 36 L.Ed.2d 419; United States v. Wade, 1967, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149. See also Chapman v. California, 1967, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705, and Justice Harlan's dissent in Fahy v. Connecticut, 1963, 375 U.S. 85, 92, 84 S.Ct. 229, 233, 11 L.Ed.2d 177.[4] A more stringent standard should not apply where the sole error alleged is the improper but non-prejudicial laying of venue.[5]
 
 
 33
 In what apparently is the only previous reported case on improper venue in which the issue of prejudice was raised and considered, the District of Columbia Circuit refused to dismiss the case for improper venue because, as to the defendant, "the erroneous determination of the venue (amounted) to harmless error," Whittier v. Emmet, 1960, 108 U.S.App.D.C. 191, 281 F.2d 24.
 
 That court correctly said:
 
 34
 Venue is primarily designed to protect defendants from inconvenient forums and courts from inconvenient lawsuits. Once the case has been heard fully and fairly on the merits, the reasons for reversing the judgment on grounds of improper venue are substantially diminished in the absence of prejudice to a party who has preserved his standing to complain by timely objection.
 
 
 35
 281 F.2d at 30 (footnotes omitted).
 
 
 36
 By contrast, in none of the cases the majority cites was the issue of prejudice raised and considered, although in each instance of reversal after trial, prejudice to the defendant's rights can readily be inferred. For example, Olberding v. Illinois Central R. Co., 1953, 346 U.S. 338, 74 S.Ct. 83, 98 L.Ed. 39, and Lied Motor Car Co. v. Maxey, 8 Cir. 1953, 208 F.2d 672, were tort cases tried to a jury. Obvious reasons to conclude that, in a tort case, trial to a jury in the wrong forum may be less desirable than trial to a panel drawn from the venire in another place will occur to anyone experienced in litigation. In Michigan National Bank v. Robertson, 1963, 372 U.S. 591, 83 S.Ct. 914, 9 L.Ed.2d 961, the court held that, under 12 U.S.C. § 94, the restrictive venue statute applicable in suits against national banks, a bank properly suable only in Michigan could not be sued in Nebraska. Besides the obvious prejudice involved by virtue of geographical distance, the court's holding would find additional support in the policy considerations, not applicable here, underlying the national bank venue statute which restricts the availability of state court suits against federally chartered banks. In Bechtel v. Liberty National Bank, 9 Cir. 1976, 534 F.2d 1335, a jury-tried fraud case, prejudice was evident because the court found that damages were excessive with regard to all defendants, not only as to the national bank with respect to which venue was improperly laid.
 
 
 37
 The majority cites approvingly language from Coulter Electronics, Inc. v. A. B. Lars Ljungberg & Co., 7 Cir. 1967, 376 F.2d 743, in which the court affirmed the dismissal of a patent infringement suit against an alien defendant for non-compliance with the restrictive venue statute governing patent cases, 28 U.S.C. § 1400(b). Strictly speaking, the case is inapposite because no trial on the merits had occurred.[6] However, Coulter Electronics provides an illustration of the prejudice that would have resulted had the case been tried in the improper forum: the defendant, an alien without a residence or place of business in this country, would have been immune to suit in the United States had the plaintiff complied with the applicable venue statute.
 
 
 38
 My brethren adopt the premise, "The venue provision of the Miller Act is a restrictive one, enacted for the benefit of defendants, not plaintiffs," supra, majority opinion at p. 248. In this case, the bonding company defendant had an office and issued the payment and performance bonds in the Eastern District, contracts of its principal were administered in the Eastern District, and the general contractor and subcontractor were domiciled and had their principal offices in the Eastern District. The place of trial was as convenient for the defendant as for the plaintiff. Congress, not convenience, creates venue, but, where jurisdiction exists and a court's error in trying a case has prejudiced no one, mechanical adherence to the words of the Miller Act venue provision serves no one's interest.
 
 
 39
 To divine an intention on the part of Congress to exact a second trial for no purpose save slavish compliance to literalism does not appear to serve Congress' purpose: had the issue been foreseen and presented, I do not think the Congress would have wished to require both litigants and taxpayers to undergo further expense in order to use another federal forum for a rematch. Lawsuits like entities should not be needlessly multiplied; I would share this case with Ockham's razor.
 
 
 40
 Therefore, I respectfully DISSENT.
 
 
 
 [1]
 28 U.S.C.A. § 2111 provides:
 On the hearing of any appeal or writ of certiorari in any case, the court shall give judgment after an examination of the record without regard to errors or defects which do not affect the substantial rights of the parties.
 
 
 [2]
 Rule 61, Federal Rules of Civil Procedure, provides:
 No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.
 
 
 [3]
 Rule 103, Federal Rules of Evidence, provides in part:
 (a) Effect of erroneous ruling. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and
 (1) Objection. In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context; or
 (2) Offer of proof. In case the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked.
 (d) Plain error. Nothing in this rule precludes taking notice of plain errors affecting substantial rights although they were not brought to the attention of the court.
 
 
 [4]
 This court has followed Chambers, Wade and Chapman in a variety of circumstances, e. g., United States v. Clark, 5 Cir. 1977, 559 F.2d 420, 426; United States v. Johnson, 5 Cir. 1977, 553 F.2d 901
 
 
 [5]
 There can be no question that the lower court had jurisdiction to try this case. In Texas Construction Co. v. United States for the Use of Caldwell Foundry and Machine Co., Inc., 5 Cir. 1956, 236 F.2d 138, cert. denied, 1955, 350 U.S. 895, 76 S.Ct. 154, 100 L.Ed. 787, we expressly held that the venue provision is "a restriction only on venue," 236 F.2d at 143, rather than a restriction on the power of the court to entertain suit and grant a remedy. In so holding, we followed decisions of the Supreme Court interpreting to like effect the restrictive venue provisions of the Suits in Admiralty Act, 46 U.S.C.A. § 742, Hoiness v. United States, 1948, 335 U.S. 297, 69 S.Ct. 70, 93 L.Ed. 16, and the Jones Act, 46 U.S.C.A. § 688, Panama R. Co. v. Johnson, 1924, 264 U.S. 375, 44 S.Ct. 391, 68 L.Ed. 748, as well as the general venue provisions for diversity actions, 28 U.S.C. § 1391(a) Olberding v. Illinois Central Railway Company, 1953, 346 U.S. 338, 74 S.Ct. 83, 98 L.Ed. 39
 
 
 [6]
 A trial involving the defendant alleging improper venue had not been held in Schnell v. Peter Eckrich & Sons, 1961, 365 U.S. 260, 81 S.Ct. 557, 5 L.Ed.2d 546; no trial at all had been held in Mercantile Natl. Bank v. Langdeau, 1963, 371 U.S. 555, 83 S.Ct. 520, 9 L.Ed.2d 523